## TRAVIS, AS COMPTROLLER OF THE STATE OF NEW YORK, *v.* YALE & TOWNE MANUFACTURING COMPANY.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 548. Argued December 15, 16, 1919.—Decided March 1, 1920.

*Shaffer* v. *Carter, ante,* 37, followed, to the effect that a State may tax incomes of non-residents arising within her borders and that there is no unconstitutional discrimination against non-residents in confining the deductions allowed them for expenses, losses, etc., to such as are connected with income so arising while allowing residents, taxed on their income generally, to make such deductions without regard to locality. P. 75.

Such a tax may be enforced as to non-residents working within the State by requiring their employers to withhold and pay it from their salaries or wages; and no unconstitutional discrimination against such non-residents results from omitting such a requirement in the case of residents. P. 76.

A regulation requiring that the tax be thus withheld is not unreasonable as applied to a sister-state corporation carrying on local business without any contract limiting the regulatory power of the taxing State; nor is the power to impose such a regulation affected by the fact that the corporation may find it more convenient to pay its employees and keep its accounts in the State of its origin and principal place of business. *Id.*

The terms "resident" and "citizen" are not synonymous, but a general taxing scheme of a State which discriminates against all non-residents necessarily includes in the discrimination those who are citizens of other States. P. 78.

A general tax laid by a State on the incomes of residents and non-residents, which allows exemptions to the residents, with increases for married persons and for dependents, but allows no equivalent exemptions to non-residents, operates to abridge the privileges and immunities of citizens of other States, in violation of § 2 of Art. IV, of the Constitution. P. 79.

*Held,* that such a discrimination in the income tax law of New York is

not overcome by a provision excluding from the taxable income of non-residents annuities, interest and dividends not part of income from a local business, or occupation, etc., subject to the tax. P. 81.

An abridgment by one State of the privileges and immunities of the citizens of other States cannot be condoned by those States or cured by retaliation. P. 82.

262 Fed. Rep. 576, affirmed.

THE case is stated in the opinion.

*Mr. James S. Y. Ivins* and *Mr. Jerome L. Cheney,* with whom *Mr. Charles D. Newton,* Attorney General of the State of New York, and *Mr. E. C. Aiken* were on the brief, for appellant:

It might be argued that an income tax is *sui generis*— neither a tax on property, on a privilege, nor on the person—but a tax on the right to receive income (*Peck & Co.* v. *Lowe,* 247 U. S. 165); or it might be argued that it is a commutation tax or a composite tax. As a composite tax it might be said that in so far as it taxes the rent from real property it is a real property tax; in so far as it is a tax on the increased value of personalty, it is a personal property tax; in so far as it is a tax on the profits from the purchase and sale of property, it is an excise on sales or on commerce; in so far as it is a tax on income from trade, profession or labor, it is a privilege tax; and in so far as it taxes residents on income from sources without the territorial jurisdiction of the sovereign, it is a pure personal tax. The characterization of a tax by administrative officers, by the phraseology of the statute, or the opinion of other courts, is not controlling. This court will look only at the practical effect of the tax as it is enforced. *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 294.

It is obvious that the tax on residents and non-residents is the same, regardless of the different phraseology, so far as both are taxed. In so far as the tax extends to income of residents from sources without the State,

there is no similar tax upon non-residents, but that is nothing for the latter to complain of. It really does not matter whether this tax be regarded (so far as non-residents are concerned) as direct or indirect, a tax on the person, on property, or on privilege. States can and do levy all three kinds. The only question is whether the State has power to enforce this tax, and its nature does not assist in determining that question.

Whether or not sovereign power to enforce a tax exists, depends solely on the ability of the State to collect it without extending its jurisdiction beyond its territorial boundaries. The sovereign can levy taxes on property which is tangible and within its boundaries, by its physical possession of that property. It can enforce taxes on privileges or rights, through preventing their exercise within its boundaries by those who do not pay. It can extend personal taxes to those over whom it has personal jurisdiction, compelling them to submit or move out. This inherent power in the sovereign extends equally to residents and to non-residents, to citizens and to aliens. *Duer* v. *Small*, 4 Blatchf. 263. It exists in each of the States except as restricted by the Federal Constitution. *State Tax on Foreign-Held Bonds*, 15 Wall. 300, 319.

With the exception of matters prohibited by the Constitution specifically (such as exports, or interstate commerce), or impliedly (such as the activities of the national government), there is no doubt of the right of the State to tax anything which is within its territorial jurisdiction. The only constitutional questions that ordinarily arise in respect to modern taxation are (1) those of the situs of intangibles, (2) those of the equal application of taxing statutes under Art. IV of Constitution and the Fourteenth Amendment, and (3) those of due process of law.

The question of the right to impose a tax on incomes of non-residents is not a question of the nature of the tax nor is it a question of whether income is property or

the acquisition of it a right or a privilege; but it is a question of the situs of the income. The doctrine that movable property follows the person for purposes of taxation has given way to the doctrine that where property has a situs, there it is taxable. *Bristol* v. *Washington County*, 177 U. S. 133.

The reason for regarding the situs of intangible property as the domicile of the person depends not on the meaning of property, but on the meaning of situs. That property is said to be taxable only at its situs is because where property is taxable—that is, wherever a sovereign can enforce a tax against it—there it has a situs. In determining whether income has a situs for purposes of taxation in a given State, we should begin, not by saying: "Where is its situs?" that we may determine whether it is taxable, but rather: "Can it be reached by taxation?" to determine whether it has a situs there. If it can be reached by taxation by a State—if the State can enforce a tax against it by due process of law—then it has a situs for taxation in that State. See *State Tax on Foreign-Held Bonds, supra; Fidelity & Columbia Trust Co.* v. *Louisville*, 245 U. S. 54; *Kirtland* v. *Hotchkiss*, 100 U. S. 491; *Tappan* v. *Merchants' National Bank*, 19 Wall. 490; *Metropolitan Life Ins. Co.* v. *New Orleans*, 205 U. S. 395; *Liverpool &c. Ins. Co.* v. *Orleans Assessors*, 221 U. S. 346, 355; *Blackstone* v. *Miller*, 188 U. S. 189; *New Orleans* v. *Stempel*, 175 U. S. 309; *Board of Assessors* v. *Comptoir National*, 191 U. S. 388; *Rogers* v. *Hennepin County*, 240 U. S. 184, 191.

A person receives income in one of three ways: It is (1) the product of property, or the money realized by the sale of such product, (2) the profit gained in the purchase and sale of property, or (3) the compensation for personal service. In each of these cases the State has power to enforce its taxes equally against residents and against non-residents.

The New York law does not deny to citizens of any
State any of the privileges or immunities of citizens of
the several States. Citizens of other States, as citizens,
and only as such, are protected by Art. IV, § 2, cl. 1.
So, if there is no discrimination against them as citizens,
the provision is not violated. Distinctions are drawn
between residents and non-residents, but this is regard-
less of citizenship—non-resident citizens of New York
are treated like all other non-residents, and citizens of
other sovereigns who are resident in New York are treated
exactly like resident citizens. The term "reside" in
the Fourteenth Amendment probably means to "be
domiciled"; or to "maintain a voting residence." It does
not mean to "have a place of abode,"—especially if one
has several places of abode.

The terms resident and citizen are not normally
synonymous and are not rendered exclusively so by the
use in the Fourteenth Amendment of the word "resident"
in one of its many meanings. *La Tourette* v. *McMaster*,
248 U. S. 465, 470. It is settled that where residence
is a proper basis for classification, the adoption of such
basis is not violative of Art. IV, § 2, cl. 1. *Travellers'
Ins. Co.* v. *Connecticut*, 185 U. S. 364; *Frost* v. *Brisbin*,
19 Wend. 11; *Chemung Canal Bank* v. *Lowery*, 93 U. S.
72, 76; *Field* v. *Barber Asphalt Paving Co.*, 194 U. S.
618; *Central Loan & Trust Co.* v. *Campbell Commission
Co.*, 173 U. S. 84; *Blake* v. *McClung*, 172 U. S. 239, 256,
257.

Classification in taxation is a proper exercise of legis-
lative power. *Pacific Express Co.* v. *Seibert*, 142 U. S.
339, 351; *Barrett* v. *Indiana*, 229 U. S. 26, 29–30; *Giozza*
v. *Tiernan*, 148 U. S. 657, 662.

This classification may discriminate between classes
in rates of taxation, *Magoun* v. *Illinois Trust & Savings
Bank*, 170 U. S. 283; *Michigan Central R. R. Co.* v.
*Powers*, 201 U. S. 245; or in exemptions from taxation,

*Beers* v. *Glynn*, 211 U. S. 477; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 237; *Citizens' Telephone Co.* v. *Fuller*, 229 U. S. 322, 329. A taxing statute is not invalid because of simple inequality between classes. *International Harvester Co.* v. *Missouri*, 234 U. S. 199, 210. It would seem that the only restriction on the power of classification is that there must be real differences between the situations of the different classes. *Northwestern Mutual Life Ins. Co.* v. *Wisconsin*, 247 U. S. 132, 138. What constitutes a real difference depends upon the purpose and extent of the legislation and all the circumstances of the subjects and objects thereof. *Tanner* v. *Little*, 240 U. S. 369, 382, 383.

The classification of residents and non-residents by the New York law is reasonable. *La Tourette* v. *McMaster, supra; Northwestern Mutual Life Ins. Co.* v. *Wisconsin, supra. Travellers' Ins. Co.* v. *Connecticut, supra,* is directly in point.

If the power to levy a tax exists, the rate fixed will not render it unconstitutional. *Tanner* v. *Little, supra.* The power to exempt certain things to the exclusion of others follows the same rules as the power to tax certain things, to the exclusion of others—it is only another way of stating the same proposition. And if the rate is immaterial in determining constitutionality as to taxation, so the rate of exemption is immaterial.

The different methods of collection provided by the statute for the tax on income received by way of compensation for personal services by residents and by non-residents, does not deprive any person of the equal protection of laws. *St. John* v. *New York*, 201 U. S. 633, 637. There are many decided cases in which different methods of procedure against residents and against non-residents have been upheld. *Tappan* v. *Merchants' National Bank, supra,* 505; *District of Columbia* v. *Brooke*, 214 U. S. 138; *Central Loan & Trust Co.* v. *Campbell Commission Co.,*

*supra,* 84, 97, 98. Many statutes taxing corporate shares and requiring the corporation to withhold at the source against non-residents but not against residents have been upheld. *Travellers' Ins. Co.* v. *Connecticut, supra; Merchants' & Manufacturers' Bank* v. *Pennsylvania,* 167 U. S. 461, 463.

The law does not deny due process of law; violate the commerce clause; or impair the obligation of contracts.

*Mr. Louis H. Porter* and *Mr. Archibald Cox* for appellee:

The appellee's factory and principal place of business is in Connecticut. It is authorized to do business in New York and owns property there, but it is a citizen and resident of Connecticut; and the statute, of course, applies equally to an individual in its position. It employs sundry persons, including citizens and residents of Connecticut and New Jersey, to work for it, and has contracted to pay them definite salaries for their services. These salaries are paid in different ways, in some instances by checks mailed from the office in Connecticut to the employees outside the State of New York, if that is material. And they are in accordance with contracts of employment entered into before the enactment of the law. The statute seeks to impose on the appellee a personal liability as the means of compelling it to obey.

The invalidity of the provisions for withholding the tax from the salaries seems to be directly established by *New York, Lake Erie & Western R. R. Co.* v. *Pennsylvania,* 153 U. S. 628.

A corporation, by securing authority to transact business within a State, does not thereby bring within the jurisdiction of that State transactions and properties wholly outside. It is not a matter of convenient collection, but a matter of jurisdiction. Distinguishing: *Hatch* v. *Reardon,* 204 U. S. 152; *Merchants' & Manufacturers' Bank* v. *Pennsylvania,* 167 U. S. 461; *Travellers' Ins. Co.*

v. *Connecticut,* 185 U. S. 364; *Brushaber* v. *Union Pacific R. R. Co.,* 240 U. S. 1; *Citizens National Bank* v. *Kentucky,* 217 U. S. 443.

To determine the constitutionality of this tax, it is accordingly necessary to ascertain, not colloquially but from a jurisdictional standpoint, what is taxed, and whether that is within the jurisdiction of the State of New York.

The tax is a subjective tax imposing personal liability upon the person receiving the "net income" which merely measures the burden imposed on the taxpayer *in personam.* *Brady* v. *Anderson,* 240 Fed. Rep. 665; *State ex rel. Sallie F. Moon Co.* v. *Wisconsin Tax Commission,* 166 Wisconsin, 287; *Income Tax Cases,* 148 Wisconsin, 456.

The liability is measured with reference to the net balance. And that net, from the year's experience, is used only as a measure of the general financial condition of the individual and his personal liability to pay from any resources he can control.

Even the amount of the tax varies according to the person of the recipient, and is not based upon the property or amount thereof. Thus, if the amount of income is twenty thousand dollars, it is taxed at one rate when received by one person, at another rate when received by two persons, and it is free from tax when received by twenty persons. This tax is not even measured strictly by the amount of income which a person receives. It is measured with a view to securing equality of sacrifice among taxpayers. *Income Tax Cases,* 148 Wisconsin, 456. And that the tax is personal is confirmed by the provisions for its collection, none of which sound *in rem* and all of which impose personal liability. That a tax with respect to "net incomes" is a personal tax, from the point of view of jurisdiction similar to a poll tax, is well indicated in *Maguire* v. *Tax Commissioner,* 230 Massachusetts, 503. Individual income as such, dissociated from the person of the owner, has no existence and is a purely fanciful conception.

A statute imposing a personal tax on persons over whom the State has no jurisdiction conflicts with the Fourteenth Amendment and is a taking of property without due process of law. *United States* v. *Erie Ry. Co.*, 106 U. S. 327; *Railroad Co.* v. *Collector*, 100 U. S. 595; *Dewey* v. *Des Moines*, 173 U. S. 193; *City of New York* v. *McLean*, 170 N. Y. 374; *Barhyte* v. *Shepard*, 35 N. Y. 237. The text writers are unanimous in this limitation on the taxing power of the States. Cooley, Taxation, 3d ed., p. 24; Brown, Jurisdiction of Courts, 2d ed., pp. 549, 550. See *State* v. *Ross*, 23 N. J. L. 517, 521. The source of the income does not in any respect change the nature and character of the tax imposed upon the recipient, and it is as much beyond the power of the State to impose such a personal tax upon a non-resident as it is to impose a capitation tax on him. If the State has not jurisdiction to impose a personal liability for tax on a non-resident, it is immaterial whether that non-resident is engaging in an occupation in the State from which he derives a large income or not. So, also if the State has the jurisdiction to impose a tax, it is immaterial whether the non-resident's occupation in the State is gainful in money or in health or in pleasure. The State either has or has not the jurisdiction to impose a personal liability against a non-resident for the payment of taxes. The situation here presented in its inevitable effect upon the integrity of the Union is of the same character as that considered by this court in *Crandall* v. *Nevada*, 6 Wall. 35. See *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489.

The argument that it is fair that a citizen of Connecticut earning his income in New York should pay a tax to that State for the protection afforded him therein is political and legislative rather than judicial. If this argument can be properly considered by the court, it must be weighed against the mischievous effects upon the integrity of the Union and from this standpoint the tax in question would

seem inconsistent with the very spirit of the Constitution. The provisions of the statute here cannot be sustained as a tax on property.

A "net income" under this statute is but a measure of the condition of the person receiving and enjoying it. A debt of ten thousand dollars may be paid to one person or to ten, but remains a fixed measurable amount. Ten thousand dollars paid in gross salaries means nothing as to the net income of the recipients without consideration of their number and personality. Ten thousand dollars in salaries paid to a number of recipients may after the computation yield an aggregate of net incomes entirely different from that which it yields if paid to one. The personal condition of the recipient, and not the amount or character of the payment made, constitutes and determines the fact of net income. It seems, therefore, impossible to conceive a net income for purposes of this taxation separate and distinct from the person receiving it.

The laws of New York do not create, give validity to, or affect, the income of appellee's non-resident employees. They are employed and paid in Connecticut, whose laws govern the contract of employment and whose courts enforce the contract. The services rendered are not income. The services are performed in whole or in part in New York. The net income never has any existence in New York. The gross salary here is not owing by, or to, anyone in New York. The fact that the appellee can legally transact business in New York obviously makes no difference in the situs of the obligation.

Moreover, property to be taxable in a State must have some permanency there, and not be merely temporarily within the State. *Ayer & Lord Tie Co.* v. *Kentucky,* 202 U. S. 409; *Buck* v. *Beach,* 206 U. S. 392; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194.

In each of those cases such as *Tappan* v. *Merchants' National Bank,* 10 Wall. 490, where a tax has been sus-

tained on property of a non-resident, there were present
two factors which have been universally recognized as
essential to jurisdiction—(1) some definite and specific
property in existence, (2) having in a real sense a situs
in the taxing State. *State Tax on Foreign-Held Bonds*,
15 Wall. 300; *Board of Assessors* v. *New York Life Ins. Co.*,
216 U. S. 517; *Hawley* v. *Malden*, 232 U. S. 1; *Fidelity &
Columbia Trust Co.* v. *Louisville*, 245 U. S. 54; *Southern
Pacific Co.* v. *Kentucky*, 222 U. S. 63.

The cases in which the courts have held that choses in
action may acquire a situs different from the residence
of the owner are not in point. A chose in action has not
yet been paid. The debtor has only promised to pay it,
and its value depends on the promise of the debtor. The
actual money to pay the chose in action is in the State
where he resides. Furthermore, the income tax is not
assessed upon all money that comes to the recipient.
It is only after the net amount has been determined after
deducting from the gross receipts certain allowable
expenses by way of deductions that the taxable amount
is determined. Before that amount is determined and
before any assessment can be laid thereon, most of the
income, both gross and net, has been expended. The
theory of a property tax is that it is a lien on the property
taxed. Obviously the State cannot lawfully impose a
tax lien upon property which is not itself in existence.
The proposition is necessarily a contradiction in terms.
*De Ganay* v. *Lederer*, 250 U. S. 376, distinguished.

The distinction between a tax on the income from
property and a tax on the income from occupations and
professions was clearly pointed out in *Pollock* v. *Farmers'
Loan & Trust Co.*, 158 U. S. 635, 637. The distinction
between the rights of the citizens of the several States,
which are assured by the Constitution, and those of
foreigners, who may be completely excluded from the
United States, is pointed out in *United States* v. *Bennett*,

232 U. S. 299, and more specifically in *Railroad Co.* v. *Collector, supra.*

The provisions of the statute taxing non-residents cannot be sustained as imposing a privilege or license tax; nor on the theory that the State of New York has in fact power to collect the tax. It is not going too far to say that in every case in which this court has held unconstitutional a state law imposing a tax on persons or property outside its jurisdiction, the State had power to enforce the tax, because otherwise the case would not have been brought. *Board of Assessors* v. *New York Life Ins. Co., supra; New York, Lake Erie & Western R. R. Co.* v. *Pennsylvania, supra; Morgan* v. *Parham,* 16 Wall. 471; *Louisville &c. Ferry Co.* v. *Kentucky,* 188 U. S. 385.

As between nations, the proposition that power to collect is the test of right to tax may be correct. Just as foreigners may be completely excluded from the United States (*United States* v. *Bennett, supra*), so anything that the United States can in fact seize it may perhaps tax. But the power of the individual States of the Union is limited by the Federal Constitution.

The tax on non-residents cannot be sustained on any theory that the State of New York protects their net income.

The provisions of the statute taxing non-residents are unconstitutional because they discriminate against citizens and residents of Connecticut and New Jersey. A materially higher tax is imposed on non-residents than upon residents.

The provisions operating to discriminate against appellee's non-resident employees conflict with § 2 of Art. IV of the Constitution and the privileges and immunities clause of the Fourteenth Amendment. A statute which in fact operates to defeat rights secured by the Constitution cannot be justified by invoking

the necessity of classification in taxation or by the fact that the words of the Constitution do not appear in the statute. *Chalker* v. *Birmingham & Northwestern Ry. Co.*, 249 U. S. 522.

There is no relevancy in cases where the State is dealing with a privilege which it may grant or withhold, such as those relating to foreign corporations doing business in the State, or succession taxes, or the nation's treatment of foreigners, because they do not deal with discrimination against persons having rights secured by the Constitution. *La Tourette* v. *McMaster*, 248 U. S. 465; *People* v. *Wearer*, 100 U. S. 539; *Sprague* v. *Fletcher*, 69 Vermont, 69.

*Mr. John W. Griggs*, by leave of court, filed a brief as *amicus curiæ*.

*Mr. Laurence Arnold Tanzer*, *Mr. William P. Burr*, *Mr. William S. Rann* and *Mr. William J. Wallin*, by leave of court, filed a brief as *amici curiae*.

MR. JUSTICE PITNEY delivered the opinion of the court.

This was a suit in equity, brought in the District Court by appellee against appellant as Comptroller of the State of New York to obtain an injunction restraining the enforcement of the Income Tax Law of that State (c. 627, Laws 1919) as against complainant, upon the ground of its repugnance to the Constitution of the United States because violating the interstate commerce clause, impairing the obligation of contracts, depriving citizens of the States of Connecticut and New Jersey employed by complainant of the privileges and immunities enjoyed by citizens of the State of New York, depriving complainant and its non-resident employees of their

property without due process of law, and denying to such employees the equal protection of the laws. A motion to dismiss the bill—equivalent to a demurrer—was denied upon the ground that the act violated § 2 of Art. IV of the Constitution by discriminating against non-residents in the exemptions allowed from taxable income; an answer was filed, raising no question of fact; in due course there was a final decree in favor of complainant; and defendant took an appeal to this court under § 238, Judicial Code.

The act (§ 351) imposes an annual tax upon every resident of the State with respect to his net income as defined in the act, at specified rates, and provides also: "A like tax is hereby imposed and shall be levied, collected and paid annually, at the rates specified in this section, upon and with respect to the entire net income as herein defined, except as hereinafter provided, from all property owned and from every business, trade, profession or occupation carried on in this state by natural persons not residents of the state." Section 359 defines gross income, and contains this paragraph: "3. In the case of taxpayers other than residents, gross income includes only the gross income from sources within the state, but shall not include annuities, interest on bank deposits, interest on bonds, notes or other interest-bearing obligations or dividends from corporations, except to the extent to which the same shall be a part of income from any business, trade, profession or occupation carried on in this state subject to taxation under this article." In § 360 provision is made for deducting in the computation of net income expenses, taxes, losses, depreciation charges, etc.; but, by paragraph 11 of the same section, "In the case of a taxpayer other than a resident of the state the deductions allowed in this section shall be allowed only if, and to the extent that, they are connected with income arising from sources within the state; . . ." By

§ 362, certain exemptions are allowed to any resident individual taxpayer, viz., in the case of a single person a personal exemption of $1,000, in the case of the head of a family or a married person living with husband or wife, $2,000; and $200 additional for each dependent person under 18 years of age or mentally or physically defective. The next section reads as follows: "§ 363. Credit for taxes in case of taxpayers other than residents of the state. Whenever a taxpayer other than a resident of the state has become liable to income tax to the state or country where he resides upon his net income for the taxable year, derived from sources within this state and subject to taxation under this article, the comptroller shall credit the amount of income tax payable by him under this article with such proportion of the tax so payable by him to the state or country where he resides as his income subject to taxation under this article bears to his entire income upon which the tax so payable to such other state or country was imposed; provided that such credit shall be allowed only if the laws of said state or country grant a substantially similar credit to residents of this state subject to income tax under such laws." Section 366 in terms requires that every "withholding agent" (including employers) shall deduct and withhold 2 per centum from all salaries, wages, etc., payable to non-residents, where the amount paid to any individual equals or exceeds $1,000 in the year, and shall pay the tax to the Comptroller. This applies to a resident employee, also, unless he files a certificate showing his residence address within the State.

Complainant, a Connecticut corporation doing business in New York and elsewhere, has employees who are residents some of Connecticut others of New Jersey but are occupied in whole or in part in complainant's business in New York. Many of them have annual salaries or fixed compensation exceeding $1,000 per year, and the

amount required by the act to be withheld by complainant from the salaries of such non-resident employees is in excess of $3,000 per year. Most of these persons are engaged under term contracts calling for stipulated wages or salaries for a specified period.

The bill sets up that defendant, as Comptroller of the State of New York, threatens to enforce the provisions of the statute against complainant, requires it to deduct and withhold from the salaries and wages payable to its employees residing in Connecticut or New Jersey and citizens of those States respectively, engaged in whole or in part in complainant's business in the State of New York, the taxes provided in the statute, and threatens to enforce against complainant the penalties provided by the act if it fails to do so; that the act is unconstitutional for the reasons above specified; and that if complainant does withhold the taxes as required it will be subjected to many actions by its employees for reimbursement of the sums so withheld. No question is made about complainant's right to resort to equity for relief; hence we come at once to the constitutional questions.

That the State of New York has jurisdiction to impose a tax of this kind upon the incomes of non-residents arising from any business, trade, profession, or occupation carried on within its borders, enforcing payment so far as it can by the exercise of a just control over persons and property within the State, as by garnishment of credits (of which the withholding provision of the New York law is the practical equivalent); and that such a tax, so enforced, does not violate the due process of law provision of the Fourteenth Amendment, is settled by our decision in *Shaffer* v. *Carter,* this day announced, *ante,* 37, involving the income tax law of the State of Oklahoma. That there is no unconstitutional discrimination against citizens of other States in confining the deduction of expenses, losses, etc., in the case of non-resident taxpayers, to such as are

connected with income arising from sources within the taxing State, likewise is settled by that decision.

It is not here asserted that the tax is a burden upon interstate commerce; the point having been abandoned in this court.

The contention that an unconstitutional discrimination against non-citizens arises out of the provision of § 366 confining the withholding at source to the income of non-residents is unsubstantial. That provision does not in any wise increase the burden of the tax upon non-residents, but merely recognizes the fact that as to them the State imposes no personal liability, and hence adopts a convenient substitute for it. See *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 239.

Nor has complainant on its own account any just ground of complaint by reason of being required to adjust its system of accounting and paying salaries and wages to the extent required to fulfill the duty of deducting and withholding the tax. This cannot be deemed an unreasonable regulation of its conduct of business in New York. *New York, Lake Erie & Western R. R. Co.* v. *Pennsylvania,* 153 U. S. 628, cited in behalf of complainant, is not in point. In that case the State of Pennsylvania granted to a railroad company organized under the laws of New York and having its principal place of business in that State the right to construct a portion of its road through Pennsylvania, upon prescribed terms which were assented to and complied with by the company and were deemed to constitute a contract, not subject to impairment or modification through subsequent legislation by the State of Pennsylvania except to the extent of establishing reasonable regulations touching the management of the business done and the property owned by the company in that State, not materially interfering with or obstructing the substantial enjoyment of the rights previously granted. Afterwards, Pennsylvania undertook by statute to re-

quire the company, when making payment of coupons upon bonds previously issued by it, payable at its office in the City of New York, to withhold taxes assessed by the State of Pennsylvania against residents of that State because of ownership of such bonds. The coupons were payable to bearer, and when they were presented for payment it was practically impossible for the company to ascertain who were the real owners, or whether they were owned by the same parties who owned the bonds. The statute was held to be an unreasonable regulation and hence to amount to an impairment of the obligation of the contract.

In the case at bar complainant, although it is a Connecticut corporation and has its principal place of business in that State, is exercising the privilege of carrying on business in the State of New York without any contract limiting the State's power of regulation. The taxes required to be withheld are payable with respect to that portion only of the salaries of its employees which is earned within the State of New York. It might pay such salaries, or this portion of them, at its place of business in New York; and the fact that it may be more convenient to pay them in Connecticut is not sufficient to deprive the State of New York of the right to impose such a regulation. It is true complainant asserts that the act impairs the obligation of contracts between it and its employees; but there is no averment that any such contract made before the passage of the act required the wages or salaries to be paid in the State of Connecticut, or contained other provisions in anywise conflicting with the requirement of withholding.

The District Court, not passing upon the above questions, held that the act, in granting to residents exemptions denied to non-residents, violated the provision of § 2 of Art. IV of the Federal Constitution: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States"; and, notwithstand-

ing the elaborate and ingenious argument submitted by appellant to the contrary, we are constrained to affirm the ruling.

The purpose of the provision came under consideration in *Paul* v. *Virginia*, 8 Wall. 168, 180, where the court, speaking by Mr. Justice Field, said: "It was undoubtedly the object of the clause in question to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; it gives them the right of free ingress into other States, and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws. It has been justly said that no provision in the Constitution has tended so strongly to constitute the citizens of the United States one people as this." And in *Ward* v. *Maryland*, 12 Wall. 418, holding a discriminatory state tax upon non-resident traders to be void, the court, by Mr. Justice Clifford, said (p. 430): "Beyond doubt those words [privileges and immunities] are words of very comprehensive meaning, but it will be sufficient to say that the clause plainly and unmistakably secures and protects the right of a citizen of one State to pass into any other State of the Union for the purpose of engaging in lawful commerce, trade, or business without molestation; to acquire personal property; to take and hold real estate; to maintain actions in the courts of the State; and to be exempt from any higher taxes or excises than are imposed by the State upon its own citizens."

Of course the terms "resident" and "citizen" are not synonymous, and in some cases the distinction is important

(*La Tourette* v. *McMaster*, 248 U. S. 465, 470); but a general taxing scheme such as the one under consideration, if it discriminates against all non-residents, has the necessary effect of including in the discrimination those who are citizens of other States; and, if there be no reasonable ground for the diversity of treatment, it abridges the privileges and immunities to which such citizens are entitled. In *Blake* v. *McClung*, 172 U. S. 239, 247; 176 U. S. 59, 67, the court held that a statute of Tennessee, declaring the terms upon which a foreign corporation might carry on business and hold property in that State, which gave to its creditors residing in Tennessee priority over all creditors residing elsewhere, without special reference to whether they were citizens or not, must be regarded as contravening the "privileges and immunities" clause.

The nature and effect of the crucial discrimination in the present case are manifest. Section 362, in the case of residents, exempts from taxation $1,000 of the income of a single person, $2,000 in the case of a married person, and $200 additional for each dependent. A non-resident taxpayer has no similar exemption; but by § 363, if liable to an income tax in his own State, including income derived from sources within New York and subject to taxation under this act, he is entitled to a credit upon the income tax otherwise payable to the State of New York by the same proportion of the tax payable to the State of his residence as his income subject to taxation by the New York Act bears to his entire income taxed in his own State; "provided that such credit shall be allowed only if the laws of said state . . . grant a substantially similar credit to residents of this state subject to income tax under such laws." [1]

---

[1] Reading the statute literally, there would appear to be an additional discrimination against non-residents in that under § 366 the "withholding agent" (employer) is required to withhold 2 per cent. from all salaries, wages, etc., payable to any individual non-resident

In the concrete, the particular incidence of the discrimination is upon citizens of Connecticut and New Jersey, neither of which States has an income tax law. A considerable number of complainant's employees, residents and citizens of one or the other of those States, spend their working time at its office in the city of New York, and earn their salaries there. The case is typical; it being a matter of common knowledge that from necessity, due to the geographical situation of that city, in close proximity to the neighboring States, many thousands of men and women, residents and citizens of those States, go daily from their homes to the city and earn their livelihood there. They pursue their several occupations side by side with residents of the State of New York—in effect competing with them as to wages, salaries, and other terms of employment. Whether they must pay a tax upon the first $1,000 or $2,000 of income, while their associates and competitors who reside in New York do not, makes a substantial difference. Under the circumstances as disclosed, we are unable to find adequate ground for the discrimination, and are constrained to hold that it is an unwarranted denial to the citizens of Connecticut and New Jersey of the privileges and immunities enjoyed by citizens of New York. This is not a case of occasional or accidental inequality due to circumstances personal to the taxpayer (see *Amoskeag*

---

amounting to $1,000 or more in the year; whereas by § 351 the tax upon residents (indeed, upon non-residents likewise, so far as this section goes), is only one per centum upon the first $10,000 of net income. It is said, however, that the discrepancy arose through an amendment made to § 351 while the bill was pending in the legislature, no corresponding amendment having been made in § 366. In view of this, and taking the whole of the act together, the Attorney General has advised the Comptroller that § 366 requires withholding of only one per centum upon the first $10,000 of income. And the Comptroller has issued regulations to that effect. Hence we treat the discrepancy as if it did not exist.

*Savings Bank* v. *Purdy*, 231 U. S. 373, 393–394; *Maxwell* v. *Bugbee*, 250 U. S. 525, 543); but a general rule, operating to the disadvantage of all non-residents including those who are citizens of the neighboring States, and favoring all residents including those who are citizens of the taxing State.

It cannot be deemed to be counterbalanced by the provision of par. 3 of § 359 which excludes from the income of non-resident taxpayers "annuities, interest on bank deposits, interest on bonds, notes or other interest-bearing obligations or dividends from corporations, except to the extent to which the same shall be a part of income from any business, trade, profession or occupation carried on in this state subject to taxation under this article." This provision is not so conditioned as probably to benefit non-residents to a degree corresponding to the discrimination against them; it seems to have been designed rather (as is avowed in appellant's brief) to preserve the preëminence of New York City as a financial center.

Nor can the discrimination be upheld, as is attempted to be done, upon the theory that non-residents have untaxed income derived from sources in their home States or elsewhere outside of the State of New York, corresponding to the amount upon which residents of that State are exempt from taxation under this act. The discrimination is not conditioned upon the existence of such untaxed income; and it would be rash to assume that non-residents taxable in New York under this law, as a class, are receiving additional income from outside sources equivalent to the amount of the exemptions that are accorded to citizens of New York and denied to them.

In the brief submitted by the Attorney General of New York in behalf of appellant, it is said that the framers of the act, in embodying in it the provision for unequal treatment of the residents of other States with

respect to the exemptions, looked forward to the speedy adoption of an income tax by the adjoining States; in which event, injustice to their citizens on the part of New York could be avoided by providing similar exemptions similarly conditioned. This, however, is wholly speculative; New York has no authority to legislate for the adjoining States; and we must pass upon its statute with respect to its effect and operation in the existing situation. But besides, in view of the provisions of the Constitution of the United States, a discrimination by the State of New York against the citizens of adjoining States would not be cured were those States to establish like discriminations against citizens of the State of New York. A State may not barter away the right, conferred upon its citizens by the Constitution of the United States, to enjoy the privileges and immunities of citizens when they go into other States. Nor can discrimination be corrected by retaliation; to prevent this was one of the chief ends sought to be accomplished by the adoption of the Constitution.

*Decree affirmed.*

MR. JUSTICE McREYNOLDS concurs in the result.