OPINION OF THE COURT
Barry A. Cozier, J.
BACKGROUND
Plaintiffs in action Nos. 1 through 3 are residents of States other than New York, and in action No. 4, plaintiff is the State of Connecticut. Plaintiffs seek to enjoin as unconstitutional the collection of the tax imposed on nonresidents of the State of New York (the State) under Tax Law § 1305 (b) (the Commuter Tax or Commuter Tax amendment), and Model Local Law § 1 (h) (General City Law § 25-m), as amended by chapter 5 of the Laws of 1999, which was enacted into law on May 27, 1999, and takes effect on July 1, 1999. The Commuter Tax amendment renders “nonresidents” subject to the Commuter Tax by excluding from its definition residents of New York State who commute from elsewhere in the State. Thus, the Commuter Tax, which is paid to New York City’s general fund, will no longer be imposed on State residents who commute to their employment in the City. Alternatively, if those portions of the amended law excluding New York State residents from the tax *301 are ultimately declared invalid or unconstitutional, by its terms the entire Commuter Tax will be repealed and of no force or effect. (L 1999, ch 5, § 9 [2].) ,
On May 27, 1999, Governor Pataki signed into law chapter 5 of the Laws of 1999, which amends the Commuter Tax, effective July 1, 1999, by repealing that part of the tax which is imposed on the earnings of State residents. The Commuter Tax amendment, section 2, amends the definition of “nonresident individual” contained in Model Local Law § 1 (h) (General City Law § 25-m), to read as follows: “Nonresident individual. — A nonresident individual means an individual who is not a resident of the city or the state of new york.” Thus, effective July 1, 1999, the Commuter Tax, as amended, will be imposed only on non-City residents who are also non-State residents.
DISCUSSION
I. Privileges and Immunities
The Privileges and Immunities Clause of the United States Constitution provides that “[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.” (US Const, art IV, § 2.) The intent of this clause was to “help fuse into one Nation a collection of independent, sovereign States.” (Toomer v Witsell, 334 US 385, 395 [1948]; see also, Paul v Virginia, 8 Wall [75 US] 168, 180 [1868] [purpose of the Privileges and Immunities Clause is to place “the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.”].) More than one century ago, the Supreme Court recognized that this clause “plainly and unmistakably secures and protects the right of a citizen of one State to * * * be exempt from any higher taxes or excises than are imposed by the State upon its own citizens.” (Ward v Maryland, 12 Wall [79 US] 418, 430 [1870].)
The passage of time has not weakened this bedrock principle of the Privileges and Immunities Clause. Indeed, the United States Supreme Court reiterated this doctrine just one year ago when it declared that “[t]ax provisions imposing discriminatory treatment on nonresident individuals must be reasonable in effect and based on a substantial justification other than the fact of nonresidence.” (Lunding v New York Tax Appeals Tribunal, 522 US 287, 314 [1998].) In the course of the approximately 130 years separating Ward (supra) and Lund- *302 ing, courts have repeatedly found that the Privileges and Immunities Clause specifically prohibits unduly burdensome taxation on nonresidents. (See, e.g., Shaffer v Carter, 252 US 37, 56 [1920] [the Privileges and Immunities Clause guarantees citizens of one State the right to “remove to and carry on business in another without being subjected in property or person to taxes more onerous than the citizens of the latter State are subjected to.”].)
However, the Constitution does not require exact equality between residents and nonresidents of a State, and as the United States Supreme Court has recognized in certain circumstances, a State may sometimes treat nonresidents in a disproportionate manner. (See, Travis v Yale & Towne Mfg. Co., 252 US 60, 79 [1920] [where nonresidents are subject to different treatment, there must be “reasonable ground for the diversity of treatment”].) Moreover, the United States Supreme Court has recognized that State Legislatures have considerable discretion in formulating tax policy in light of “ ‘local needs’.” (Lunding v New York Tax Appeals Tribunal, supra, at 297, quoting Madden v Kentucky, 309 US 83, 88 [1940].) Thus, to sustain a tax that discriminates on the basis of State residence, a State must demonstrate that (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State’s objective. (Supreme Ct. v Piper, 470 US 274, 284 [1985].)
According to the State, such a substantial reason exists, as New York State resident commuters bear a heavier tax burden than nonresident commuters in terms of fiscal support provided to New York City. The State contends that even after the implementation of chapter 5, New York State resident commuters will pay more than twice as much as nonresident commuters in tax revenues which benefit New York City, and that chapter 5 is intended to distribute some of the currently existing New York City budget surplus to taxpayers who help support it. Specifically, the State maintains that with chapter 5 in effect, a New York State resident commuter who earns $82,000 in income will pay $712 in State taxes that flow to the benefit of New York City, whereas a nonresident commuter will pay only $343 in Commuter Tax. Among the taxes that the State claims New York State resident commuters pay that nonresident commuters either do not or are less heavily burdened are the Metropolitan Commuter Transportation District tax, the State sales tax, income tax on interest, dividends, and capital *303 gains, and numerous miscellaneous consumption taxes such as motor fuel, alcohol, and cigarettes. The State argues that it has a significant interest in protecting its citizens from unnecessary tax burdens and that chapter 5 places New York State resident commuters on a closer economic footing with nonresident commuters.
Plaintiffs counter that there is no legal authority which supports justification of a discriminatory tax on the basis of examining a set of unrelated taxes. Moreover, plaintiffs maintain that the State’s factual premise that New York State resident commuters contribute more to the support of the City is wholly speculative and false. According to plaintiffs, should the State’s reasoning be adopted, the inevitable result would be “tax wars” between neighboring States.
The question before the court is whether balancing the tax burden as to its own residents is a substantial reason for the implementation of the chapter 5 amendment, and whether the discriminatory treatment against nonresidents bears a substantial relationship to the State’s objective. The court finds that the State has failed to meet its burden.
The State is correct in its assertion that it may impose an income tax on nonresidents. (See, Shaffer v Carter, supra, at 52 [“just as a State may impose general income taxes upon its own citizens and residents whose persons are subject to its control, it may, as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to non-residents from their property or business within the State, or their occupations carried on therein”].) The State is also accurate in its observation that the power of the State to tax is broad and extensive. (See, Madden v Kentucky, supra, at 88 [recognizing the large area of discretion needed by a Legislature in formulating tax policies, the Supreme Court stated, “(s)ince the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.”].)
The United States Supreme Court has further recognized that because absolute equality in taxation can never be attained, the rule is one of substantial equality. (Lunding v New York Tax Appeals Tribunal, supra, at 297.) In other words, “[w]here nonresidents are subject to different treatment, there must be 'reasonable ground for * * * diversity of treatment.’ ” *304 (Supra, at 298.) Thus, “where the question is whether a state taxing law contravenes rights secured by [the Federal Constitution], the decision must depend not upon any mere question of form, construction, or definition, but upon the practical operation and effect of the tax imposed.” (Shaffer v Carter, supra, at 55.) Notably, however, the Supreme Court’s “concern for the integrity of the Privileges and Immunities Clause is reflected through a ‘standard of review substantially more rigorous than that applied to state tax distinctions, among, say, forms of business organizations or different trades and professions.’ ” (Lunding v New York Tax Appeals Tribunal, supra, at 298, quoting Austin v New Hampshire, 420 US 656, 663 [1975].)
The State bases its argument on the fact that New York State resident commuters bear a greater tax burden than nonresident commuters in terms of fiscal support provided to New York City. This may be true.[1] But the mere fact that the Legislature has already taxed its citizens to a certain degree does not lead to the conclusion that it may subsequently tax nonresidents in an attempt to equalize the burden. (See, Mullaney v Anderson, 342 US 415, 418 [1952].) Should the court hold otherwise, each State could regularly tax nonresidents for the given reason that the nonresidents utilize the State’s resources. Plainly, each State’s residents pay more to their State’s treasury in taxes than nonresidents do. Such is the nature of State taxation. However, this mechanism does not justify a State’s impingement on the rights of nonresidents who seek to obtain employment. (See, Saenz v Roe, 526 US 489, 502 [1999].) Under the State’s reasoning, a State would be permitted to impose taxes on its residents and then cite such taxation as reason to impose a separate tax solely on nonresidents. The Privileges and Immunities Clause does not permit, and this court will not condone, such a practice.
In the midst of the United States Supreme Court’s jurisprudence on the Privileges and Immunities Clause are two decisions strikingly similar to the one currently before the court. *305 In Travis (supra), a New York tax law permitted New York State residents an exemption on the first $1,000 of income, or $2,000 if filing jointly, but denied nonresidents that same exemption in calculating New York income subject to the New York income tax. In striking down the statute, the Supreme Court used language directly applicable to the present case: “[I]t being a matter of common knowledge that from necessity, due to the geographical situation of [New York City], in close proximity to the neighboring States, many thousands of men and women, residents and citizens of those States, go daily from their homes to [New York City] and earn their livelihood there. They pursue their several occupations side by side with residents of the State of New York — in effect competing with them as to wages, salaries, and other terms of employment. Whether they must pay a tax upon the first $1,000 or $2,000 of income, while their associates and competitors who reside in New York do not, makes a substantial difference. Under the circumstances as disclosed, we are unable to find adequate ground for the discrimination, and are constrained to hold that it is an unwarranted denial to the citizens of Connecticut and New Jersey of the privileges and immunities enjoyed by citizens of New York.” (Travis v Yale & Towne Mfg. Co., 252 US, supra, at 80.)
Like the plaintiffs in Travis (supra), the parties challenging chapter 5 in the present case are subject to the Commuter Tax merely because they are nonresidents. And no doubt, like the plaintiffs in Travis, many thousands of nonresident commuters who earn their living in New York City are employed in the same positions, work for the same employers, and are paid the same salary as New York State resident commuters. The only substantial difference between the two classes, and the determining factor as to whether they are subject to the Commuter Tax, is the State in which they reside. It may be a legitimate government objective to seek to ease the tax burdens of commuters. However, residence is not a legitimate limiting factor.
The court also finds support for its decision in Austin v New Hampshire (420 US 656 [1975], supra). In Austin, the State of New Hampshire attempted to impose an income tax on nonresident commuters who worked within the State, while imposing no such income tax on New Hampshire residents. After noting that the Privileges and Immunities Clause “implicates not only the individual’s right to nondiscriminatory treatment but also, perhaps more so, the structural balance essential to the concept *306 of federalism” (supra, at 662), the Supreme Court found the statute in violation of the Privileges and Immunities Clause, as there was no substantial equality of taxation between the residents and nonresidents. Similarly, if the court were to uphold the Commuter Tax as to only nonresidents, the court has little doubt as to the possible result. Neighboring Legislatures, under pressure from constituents, would enact similar taxing schemes against nonresidents. Such retaliation is precisely the evil sought to be avoided by the Privileges and Immunities Clause, as stated by the Supreme Court in Austin and Travis (supra).
The State places great emphasis on the fact that a finding of unconstitutionality will result in a large class of nonresidents failing to share in the cost of City services and facilities. The court finds this argument wholly unpersuasive for a number of reasons. First, nonresident commuters who earn a living in the City pay New York State income tax, a portion of which is no doubt directed by the State to the City for various budgetary items. (See, Tax Law § 631 [a], [b].) Moreover, the court rejects this concern in light of the reality that for more than 30 years, New York has had the Commuter Tax in effect to address precisely this issue. In fact, the Commuter Tax was specifically enacted to equitably distribute New York City’s fiscal burden on all individuals who use its facilities and services. While the Legislature and the Governor may elect to otherwise recoup revenue lost by virtue of the enactment of chapter 5, they cannot, however, place nonresidents on unequal footing due to the mere fact that they reside outside of New York State.[2]
Notably, New York’s Court of Appeals has also found that disparate tax classifications between residents and nonresidents are contrary to New York statute and New York tax policy.[3] (See, Matter of Friedsam v State Tax Commn., 64 NY2d 76, 81 [1984] [“the Commission’s determination supporting a disparate tax classification between resident and nonresident taxpayer is contrary to statute and tax policy of this State”]; *307 see also, Matter of Gordon, 48 NY2d 266, 270-271 [1979] [“principal purpose of the privileges and immunities clause * * * is to eliminate protectionist burdens placed upon individuals engaged in trade or commerce by confining the power of a State to apply its laws exclusively to nonresidents”].) The State cites Brady v State of New York (80 NY2d 596 [1992]) in support of its position. However, Brady is not on point. There, the Court specifically stated that the statute being challenged “treats similarly situated residents and nonresidents the same” (supra, at 604), whereas, here, chapter 5 clearly does not treat residents and nonresidents the same. Accordingly, because the State has failed to show a substantial reason for the difference in treatment and consequently has failed to establish that the discrimination practiced against nonresident commuters bears a substantial relationship to its objective, the court declares that the Commuter Tax, as amended, violates the Privileges and Immunities Clause and is unconstitutional.
II. Commerce Clause
The Commerce Clause of the United States Constitution provides that: “Congress shall have Power * * * [t]o regulate Commerce * * * among the several States.” (US Const, art I, §8.)
The United States Supreme Court, as well as New York courts, have long recognized that the power to regulate commerce among the several States also creates a “negative” or “dormant” power that prevents individual States from interfering with interstate trade. (Oregon Waste Sys. v Department of Envtl. Quality, 511 US 93 [1994]; R.J. Reynolds Tobacco Co. v City of N. Y. Dept. of Fin., 237 AD2d 6 [1st Dept 1997].)
So strong is the national interest in protecting interstate commerce that any State statutes “discriminating against interstate commerce on their face are Virtually per se invalid.’ ” (Fulton Corp. v Faulkner, 516 US 325, 331 [1996], supra, quoting Oregon Waste Sys. v Department of Envtl. Quality, supra, at 99; Brown-Forman Distillers Corp. v New York State Liq. Auth., 476 US 573, 579 [1986] [“When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry.”].)
Once a State tax is found on its face to discriminate against out-of-State commerce, it is typically struck down without fur *308 ther inquiry. (Maryland v Louisiana, 451 US 725 [1981].) To overcome such facial discrimination, the State must demonstrate that the statute “ ‘advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.’” (Oregon Waste Sys. v Department of Envtl. Quality, supra, at 101.) Because the court will apply strict scrutiny in reviewing the State’s arguments, such “ ‘facial discrimination by itself may be a fatal defect.’ ” (Supra; see also, Hughes v Oklahoma, 441 US 322, 337 [1979].)
The Commuter Tax amendment would allow New York residents the economic advantage of pursuing their careers tax-free in New York City, while imposing a tax on competing employees from other States. The State contends that the Commuter Tax advances a legitimate local purpose which cannot be served by reasonable nondiscriminatory means because other taxing alternatives — taxing in-City services and purchases more heavily or raising or lowering State income tax rates — would similarly burden in-State and out-of-State commuters equally. The State also contends that potential Statewide reduction of the sales taxes and unearned income taxes would result in a further tax loss to the City without equalizing the in-State and out-of-State burdens at issue.
However, to establish the compensatory tax defense, the State must: (1) identify the specific intrastate tax for which it is attempting to compensate (Maryland v Louisiana, supra); (2) show that the tax on interstate commerce is roughly approximate to, but not in excess of, the amount of tax on intrastate commerce (Oregon Waste Sys. v Department of Envtl. Quality, supra, at 103); and (3) establish that the events on which the interstate and intrastate taxes are based are substantially equivalent in that they are sufficiently similar in substance to serve as mutually exclusive proxies for each other. (Supra.)
In examining the first prong of the test, the State has not identified the specific intrastate tax for which it is attempting to compensate. The majority of the taxes the State identifies are general revenue taxes. Turning to the second prong of the test, the State has also failed to show that the taxes approximate each other. Here, the State relies on general intrastate taxes which benefit the City’s infrastructure, not all of which directly benefit out-of-State residents.
As for the final prong of the test, the State also fails to show that the taxes are on equivalent events. The number of taxes which the State alleges as compensation for the Commuter *309 Tax do not burden activities “sufficiently similar in substance to serve as mutually exclusive ‘prox[ies]’ for each other.” (Oregon Waste Sys. v Department of Envtl. Quality, supra, at 103.) Noting its “recent reluctance to recognize new categories of compensatory taxes”, the United States Supreme Court has rejected such attempts to pair general (and purportedly “intrastate”) revenue taxes with more specific levies on out-of-State actors. (Supra, at 105.)
Recently, the New York Court of Appeals struck a law similar to the one at issue, where the taxing entity was unable to show that the taxes were on equivalent events. In Homier Distrib. Co. v City of Albany (90 NY2d 153 [1997]), the Court of Appeals struck, under the Commerce Clause, a local ordinance imposing a tax on the gross receipts of transitory peddlers— not on local merchants with fixed locations in the municipality. Rejecting an attempt to justify the tax based on local property tax paid by fixed retailers, the Court of Appeals found “no relationship * * * between * * * the ‘taxable event’ that trigger [ed] the obligation to pay the transient-retailer tax, i.e., the sale of goods from a temporary location.” (Supra, at 163-164.)
Similarly, the alleged compensatory taxes that the State relies upon are not imposed on the same activities that give rise to the Commuter Tax and have not been proven to support the services provided to interstate commuters by New York City. As such, the State has failed to meet their burden under the compensatory tax defense. The tax at issue clearly favors intrastate economic activity over equivalent interstate activity by taxing the interstate labor market, in violation of the Commerce Clause.
III. Equal Protection
The Equal Protection and Due Process Clauses of the United States Constitution guarantee that a State will not subject individuals to discrimination based on invidious classifications. (Harris v McRae, 448 US 297, 322 [1980].) In the area of taxation, States have some latitude “in creating classifications and distinctions” among groups of taxpayers. (Regan v Taxation With Representation, 461 US 540, 547 [1983].)
However, not all classifications are acceptable. Classifications of taxpayers based on factors other than race, national origin, or gender must be rationally related to a legitimate government interest in order to survive constitutional scrutiny. (Exxon Corp. v Eagerton, 462 US 176, 195-196 [1983].) Statutes which draw distinctions among individuals are invalid if “the *310 varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the only reasonable conclusion is] that the legislature’s actions were irrational.” (Vance v Bradley, 440 US 93, 97 [1979].)
Similarly, article I, § 11 of the New York State Constitution mandates equal protection of laws of the State to any person, and prohibits discrimination against a person by the State. Article I, § 6 assures due process of law. These guarantees are essentially the same as the equal protection and due process rights afforded under the Federal Constitution. The New York courts employ the same rational-basis standard to test the validity of statutes against an equal protection and due process challenge. (Foss v City of Rochester, 104 AD2d 99, 107 [4th Dept 1984].) Tax statutes satisfy New York’s equal protection and due process standards if the provisions afford “general uniformity of treatment of those similarly situated, the classifications for disparity [are] reasonable, and the taxes imposed [are] uniform within the class.” (Osborn Mem. Home Assn. v Chassin, 240 AD2d 143, 149 [2d Dept 1998].)
While the State wishes to ease the tax burdens for its residents to increase their spending power, residency alone is a wholly arbitrary and irrational basis on which to create distinctions among taxpayers. (Williams v Vermont, 472 US 14 [1985]; WHYY, Inc. v Borough of Glassboro, 393 US 117 [1968].) Although in-State residents and out-of-State residents use the same services during the work day and derive the same benefits from earning their livelihood in the City, they are treated differently for taxation purposes solely on the basis of residency, which is not a legitimate government purpose. As such, the Commuter Tax violates the Equal Protection and Due Process Clauses of the New York State and United States Constitutions.[4]
CONCLUSIONS
Under CPLR 3212, a motion for summary judgment will be granted if the cause of action or defense is adequately established so that a court may direct judgment as a matter of law. The movant bears the burden of showing that there are no *311 material issues of fact for trial. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985].) In the instant actions, there are no material issues of fact in dispute. The only issue before the court is the constitutionality of the Commuter Tax amendment (Tax Law § 1305 [b], as amended by L 1999, ch 5), as it applies to plaintiffs. Therefore, it is proper for the court to summarily decide these cases. (Andre v Pomeroy, 35 NY2d 361 [1974].)
Accordingly, after due deliberation, the court grants the motions by plaintiffs in action Nos. 1 through 4 for summary judgment, pursuant to CPLR 3212, declaring the Commuter Tax amendment (Tax Law § 1305 [b], as amended by L 1999, ch 5) unconstitutional, in violation of the Privileges and Immunities Clause, the Commerce Clause and the Equal Protection Clause of the United States Constitution, as well as the Equal Protection Clause of the New York State Constitution.

. The State’s argument that New York State resident commuters bear a heavier tax burden than nonresident commuters is seriously called into doubt by reply papers submitted by plaintiffs. The court notes that when a State attempts to rely on general forms of taxation, the courts “ordinarily cannot even begin to make the sorts of quantitative assessments that the compensatory tax doctrine requires.” (Fulton Corp. v Faulkner, 516 US 325, 338 [1996].) Even accepting the State’s calculations, however, the court rejects its argument for the reasons that follow.

. The court notes that it appears from the language of chapter 5 that such a conclusion should come as no surprise to defendants, as section 9 (2) specifically provides for a total repeal of the Commuter Tax in the event a repeal as to only New York State residents is found unconstitutional.

. Plaintiffs have alleged violations of both the United States Constitu-tian and the New York State Constitution. In such scenarios, New York courts have generally analyzed the Federal Constitution first. (See, 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 136 [1992], cert denied 508 US 910 [1993]; Immuno AG. v Moor-Jankowski, 77 NY2d 235, 248 [1991], cert denied 500 US 954 [1991].)

. As the court has found a Commuter Tax as to only nonresident commuters violates the Privileges and Immunities Clause, the Commerce Clause, and the Equal Protection and Due Process Clauses of the United States Constitution, it need not address the argument that it also violates the right to travel.