## Wilfred R. Wheeler v. State of Vermont

[ 249 A.2d 887 ]

October Term, 1968

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed January 8, 1969

*Downs & Rachlin, James B. Cleveland, Esq.,* and *Laurence F. Gardner, Esq.,* for the Plaintiff.

*James L. Oakes,* Attorney General, *Jonathan N. Brownell,* Deputy Attorney General, for the State.

**Barney, J.** The plaintiff is a Vermont taxpayer and a New Hampshire resident. He is seeking reduction of tax levies against his Ver-

mont-earned income on the grounds that they are so formulated as to be unconstitutionally discriminatory. The tax commissioner and then the lower court denied relief and he has appealed.

The facts are not in dispute. The plaintiff lives in Enfield, New Hampshire, and is employed as a salesman by Ward Foods, Inc., of White River Junction, Vermont. He solicits orders from retail food outlets in both Vermont and New Hampshire, and receives commissions based on his sales. These commissions were his only income during 1966, the year involved in this litigation, and totaled $7,714.47. This income was the "adjusted gross income" for the plaintiff for 1966, under the definition in 32 V.S.A. §5811(1), as it appears in No. 61 of the Public Acts of the Special Session of 1966. Of this total income, $1,928.62 represented compensation earned in Vermont, and is his "Vermont derived income" under 32 V.S.A. §5811(17). It amounts to 25% of his total compensation of $7,714.47.

Under Vermont taxing procedure for the year 1966, all individual taxpayers commenced the computation of their income taxes in the same way. Starting with "adjusted gross income," which is defined in 32 V.S.A. §5811(1) as the adjusted gross income determined under the laws of the United States, except for capital gain and losses and certain exempt income not applicable here, the "Vermont taxable income" is arrived at. 32 V.S.A. §5811(19). This is the taxable income of the taxpayer under the laws of United States, but again excluding any consideration of capital gains or losses or exempt income. In other words, it is the adjusted gross income less all deductions available to the taxpayer on his federal return, without distinguishing their Vermont, New Hampshire or other derivation. 32 V.S.A. §5811(13). From this is also deducted the appropriate personal exemptions allowed by Vermont law. 32 V.S.A. §5826. With Vermont taxable income arrived at, every individual taxpayer, resident or nonresident, in computing his 1966 tax, applied the following table in 32 V.S.A. §5822:

| If the amount of that Vermont taxable income is: | The tax shall be on amount determined as follows: |
| --- | --- |
| $1,000 or less | 2% of that Vermont taxable income |
| $1,001 through $3,000 | $20 plus 4% of the excess over $1,000 |
| $3,001 through $5,000 | $100 plus 6% of the excess over $3,000 |
| $5,001 or over | $220 plus 7½% of the excess over $5,000 |

For the Vermont resident, this final figure is the tax he pays. For the nonresident, this tax figure is further reduced by the application of 32 V.S.A. §5823, which provides:

The tax imposed upon the income of a nonresident under §5822 of this title is reduced by a percentage equal to the percentage of his adjusted gross income for the taxable year which is not Vermont derived income.

For the further protection of the nonresident taxpayer, 32 V.S.A. §5827 allows a credit to avoid double taxation of income by the income tax law of another state, provided that state accords a reciprocal credit. Since New Hampshire assesses no general income tax based on ordinary earned income, this credit is not involved in this case. This leaves as the plaintiff's tax, the amount arrived at by applying the percentage relationship between his Vermont income and his total income to the tax figure based on his full income.

The process may be more easily visualized set out in the following form:

| | |
|---|---:|
| Adjusted gross income from U.S. return less any capital gains or plus any capital losses, and less any exempt income | $7,714.47 |
| Personal exemptions (4 × $500) plus deductions (10%) | 2,771.45 |
| Vermont taxable income | $4,943.02 |
| Tax according to table in 32 V.S.A. §5822 | 216.58 |
| Ratio of Vermont derived income to total adjusted gross income | 25%[1] |
| Tax of plaintiff as nonresident | $   54.15 |

[1] The statutory formula calls for a percentage of 75 to be computed and then deducted from the total tax. The result is the same.

Analysis of this computation demonstrates several things. First, that the Vermont taxpayer in this situation pays a tax of $216.58. Second, a like New Hampshire taxpayer whose income was 100% earned in Vermont would also pay a tax of $216.58. Third, and perhaps most important, the New Hampshire taxpayer would never pay any greater tax than his Vermont counterpart. It emphasizes that the New Hampshire taxpayer pays a part of the usual Vermont tax proportioned directly by the extent of his Vermont income.

The plaintiff finds this discriminatory. He argues that a New Hampshire taxpayer with some New Hampshire income pays a higher tax on his Vermont-earned portion than a Vermont taxpayer whose total income is the same as the Vermont income of the New Hampshire taxpayer. Reference to two of his examples may make his argument clearer:

|  | Vt. Taxpayer | N.H. Taxpayer |
|---|---|---|
| Adjusted gross income | $4000. | $6000. ($4000. Vt. earned) |
| Two exemptions | 1000. | 1000. |
| 10% standard deduction | 400. | 600. |
| Vermont taxable income | $2600. | . $4400. |
| Vermont tax | . $ 84. | $ 184. |
| ⅔ ratio Vt./N.H. earnings |  | 67% |
| Adjusted Vermont tax |  | $ 122.28 |

It is his contention that the true comparison lies, not between taxpayers with the same adjusted gross income, but between taxpayers having identical Vermont income. He further complains that an increase in the New Hampshire taxpayer's income from New Hampshire sources will increase the amount of tax he pays on his Vermont earnings, if it moves him up another tax bracket.

This last is, of course, true. In fact an increase in adjusted gross income from any taxable source might do the same thing. It is conceivable that this New Hampshire resident with Vermont earnings could be in the same predicament if he had no New Hampshire income at all, but did have income from someplace outside of Vermont that put his adjusted gross income at the level in question, and 'was not of a sort to be eligible for any reciprocal income tax credit.

It is the argument of the plaintiff that, since the addition of New Hampshire income increases the tax, it must be New Hampshire income that is being taxed. However, in reality what is happening is that Vermont income is being taxed at an increased rate, and nothing more

If the contention of the plaintiff is sound, at some point as progressive tax rates advanced, the measure of the tax payable would begin to go beyond the total Vermont income earned and require resort to money earned in New Hampshire. This certainly would be true if progressive rates in Vermont began to reach the highest levels applicable in Federal income taxation.

This is made abundantly clear if, in any of these situations, we assume a totally confiscatory tax rate on Vermont income of 100%. As, we have said, if New Hampshire income were in fact being taxed, the application of such a rate would necessarily, at some point, create a tax liability larger than the total Vermont income. But this cannot occur, because even with no deductions and that confiscatory rate, the provisions of 32 .V.S.A. §5823 will impose a limit measured by the Vermont derived income. This illustrates that the contention that the Vermont procedure taxes property beyond its jurisdiction cannot be supported. With it falls the argument that the Due Process Clause has been violated. *McCutchan* v. *Oklahoma Tax Commission,* 191 Okl. 578, 579, 132 P.2d 337.

It is also arithmetically obvious that the plaintiff would have no cause to complain if the Vermont income tax was a flat rate rather than progressive, since the variations in the size of his adjusted gross income would not affect the tax on his Vermont earnings. An evaluation of all of his contentions makes it clear that it is the progressive nature of the tax rate which is truly under attack.

Progressive tax rates on income, widespread among the United States and firmly imbedded in the federal tax structure, are intended to make more equitable the tax burden as it falls upon citizens of various states of affluence. It is their purpose to take into account variations in ability to pay. As such they found early and complete constitutional acceptance in *Brushaber* v. *Union Pacific,* 240 U.S. 1, 25, 36 S.Ct. 236, 60 L.Ed. 493, dealing with the 1913 federal income tax, and the question has remained at rest in that area. *Shaffer* v. *Carter,* 252 U.S. 37, 51, 40 S.Ct. 221, 64 L.Ed. 445, in 1920 indicated that it is within the taxing power of state governments to levy income taxes with progressive rates. We view this aspect of the matter as constitutionally settled.

■ We must then determine whether the application of these tax rates, applied to the plaintiff as a nonresident, is a transgression of constitutional bounds. His arguments are framed in terms of discriminatory treatment which he claims violates his privileges and immunities under Article 4, §2 of the United States Constitution, and also his right to equal protection of the laws under the Fourteenth Amendment. He contends that since he, as a nonresident, is taxed at a higher rate on his Vermont derived income than a Vermont resident whose total income is of Vermont derivation, he has been treated

with such unfair diversity as to violate these constitutional prohibitions. To show such a violation, it is his burden to demonstrate discrimination to the extent that it is arbitrary and unreasonable. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U.S. 113, 121, 41 S.Ct. 45, 47, 65 L.Ed. 165, 169.

If the principle of ability to pay is accepted, his contention is misleading, for he limits his comparison to a taxpayer of lower income than his. Going back to the examples already set out, if, in any of them relating to a combination of Vermont and New Hampshire income, the taxpayer were a Vermont resident, he would pay the full assessed tax on his combined Vermont and New Hampshire incomes, with no percentage reduction. To show discrimination, the plaintiff must first demonstrate that he is disadvantaged compared to another in an equivalent position. He has made no such showing. There is no place where his burden is increased over that of a resident in an equivalent income position. Even if it were, the taxpayer would still be confronted with the burden of showing such discrimination, nonexistent here, to be such an invidious inequality as to be arbitrary, for it to be condemned as unconstitutional. *Maxwell* v. *Bugbee,* 250 U.S. 525, 543, 40 S.Ct. 2, 63 L.Ed. 1124.

But, again, his real objection is the operation of the taxing progression. He objects to the importation of his total income for rate determination purposes. Yet this principle, too, has already been approved as constitutional. *Maxwell* v. *Bugbee, supra,* 250 U.S. 525, 539, 40 S.Ct. 2; *Great Atlantic & Pacific Tea Co.* v. *Grosjean,* 301 U.S. 412, 425, 57 S.Ct. 772, 81 L.Ed. 1193. A similar principle was recognized and accepted in our own case of *Gulf Oil Corp.* v. *Morrison,* 120 Vt. 324, 330, 141 A.2d 671, which states the necessity of establishing by appropriate evidence any claim that extraterritorial values are being taxed.

It was for the plaintiff to show that the Vermont taxing system was arbitrary and unreasonable in its classification to sustain a violation of the Equal Protection Clause. *Maxwell* v. *Bugbee, supra,* 250 U.S. 525, 543, 40 S.Ct. 2. It was for the plaintiff to demonstrate diversity of treatment without reasonable basis to sustain an abridgment of his constitutional privileges and immunities. *Travis* v. *Yale and Towne Mfg. Co.,* 252 U.S. 60, 79, 40 S.Ct. 228, 64 L.Ed. 460. He has not done so.

*Judgment affirmed.*