Jesse S. and Margaret R. MORSE

v.

Ernest H. JOHNSON, Tax Assessor,
State of Maine.

Supreme Judicial Court of Maine.

Oct. 18, 1971.

Patrick L. J. Veilleux, Kittery, Clyde Coolidge, Somersworth, N. H., Douglas R. Gray, Portsmouth, N. H., for plaintiffs.

Jerome S. Matus, Craig R. Nelson, Asst. Attys. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER; WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

This case arose as an appeal to the Superior Court under M.R.C.P., Rule 80B from a decision of the State Tax Assessor denying the Plaintiffs' petition for a tax refund, and was reported to this Court on an agreed statement of facts. There are three issues:

1) May the State of Maine levy and collect an income tax from nonresident employees of the Portsmouth Naval Shipyard, an area ceded by Maine to the federal government?

2) Does the Maine Income Tax Law violate Plaintiffs' constitutional rights under the Fourteenth Amendment by taking property without returning benefits?

3) Does the Maine Income Tax Law constitute an undue burden on interstate commerce?

The Plaintiffs, husband and wife, are residents of New Hampshire, the husband being employed at the Portsmouth Naval Shipyard, located in Kittery, Maine. They filed a joint Maine income tax return for 1969,[1] paid the assessed tax, and seasonably filed a claim for a refund, which was denied. They subsequently perfected an appeal to the Superior Court and the issues were reported to this Court. M.R.C.P., Rule 72.

The Portsmouth Naval Shipyard (Seavey Island) was ceded to the federal government by act of the Maine legislature on January 10, 1863 (P.L.1863, ch. 205), reserving only the right to serve civil and criminal process within the ceded territory.

On July 30, 1947, the Congress enacted what is commonly known as the Buck Act (4 U.S.C.A. §§ 105–110), § 106 of which purported to grant jurisdiction to the states to levy and collect income taxes from persons receiving income on federal reservations within the geographic boundaries of the taxing state.

On January 1, 1969, 36 M.R.S.A. § 5101 et seq. (Maine Income Tax Law) became effective and is the authority under which the tax assessor levied and collected the tax here in dispute. (See note 1, supra.)

When Maine ceded Seavey Island to the federal government, it reserved no authority to tax incomes earned thereon. The question to be decided is whether the Buck Act is a recession of that authority.

The Buck Act (4 U.S.C.A. § 106) provides:

"(a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."

I

■ Plaintiffs urge that the Buck Act should be construed to mean that it is an effective authority to tax income only if the State had retained such right when it ceded the land to the federal government; and since such right was not retained, Maine has no right to collect an income tax from the Plaintiffs. We do not agree. If the Court accepted Plaintiffs' argument, it would, in effect, be saying that the Buck Act is only effective to grant a right already possessed by the States which had reserved the power to tax when ceding Seavey Island. In such case, the Act would be redundant. The provisions of the Buck Act give to the States a means whereby they may enact comprehensive income tax laws without being thwarted in that effort by past state cession acts, which in most cases did not contain any reservation of the right to tax incomes.

The Plaintiffs' argument leads to the illogical situation which could result from a ceding of an area within Maine in 1971, for example, with a reservation of the right to levy an income tax on nonresident employees thereon while the State would not have the right to so levy on nonresidents similarly employed in an area ceded prior to 1969, because the right to tax income had not been reserved.

---

1. 36 M.R.S.A. § 5111 imposes an income tax "on the taxable income of every nonresident individual which is derived from sources within this State." This is known as the Maine Income Tax Law. 36 M.R.S.A. § 5101 et seq., effective January 1, 1969, as to corporations, and July 1, 1969, as to all other taxpayers.

The precise issue was presented to and answered by the Supreme Court of Pennsylvania in Kiker v. City of Philadelphia (1943), 346 Pa. 624, 31 A.2d 289, a case where the facts are parallel to the instant case. There, a Philadelphia ordinance imposed an income tax upon nonresident employees of the Philadelphia Naval Yard, an area ceded by Pennsylvania to the federal government, without reserving the right to tax incomes. However, the Court held the Buck Act to be an effective grant, or recession of that right. The Court stated, and we adopt its language, that:

> "It follows, therefore, that the Commonwealth of Pennsylvania, when it consented to the purchase of League Island by the National government and ceded jurisdiction over it, could have reserved to itself the right to tax in such area, even though the territory was acquired for use as a dockyard * * *. There can be no logical objection on constitutional grounds if the same result is accomplished by a *recession* to the State of the right to tax * * *." Id. at 293–294 (emphasis added).

The congressional intent to recede to the States a right not previously reserved seems clear and unequivocal. See also Howard v. Commissioners of Sinking Fund (Ky.1953), 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (dissent based on grounds not material to the issue at hand) where Mr. Justice Minton, speaking for the Court, stated:

> "Even though the Ordnance Plant is within the boundaries of the City of Louisville pursuant to the annexation, exclusive jurisdiction over the area still remains with the United States, except as modified by statute. * * * Within this jurisdiction, the right to tax income paid to employees of the Government who worked at the Ordnance Plant was

granted by 4 U.S.C. §§ 105–110 * * * known as the Buck Act.

> * * * * * *

"Thus the right is specifically granted * * * to levy and collect a tax measured by the income or earnings of any party 'receiving income from transactions occurring or services performed in such area * * * to the same extent and with the same effect as though such area was not a Federal area.' In other words, Kentucky was free to tax earnings just as if the Federal Government were not there."

The Buck Act, supra, is an effective recession to Maine of the right to levy and collect income taxes from nonresidents at the Portsmouth Naval Shipyard.

## II

■ The Plaintiffs argue that 36 M.R.S.A. § 5101 et seq., is unconstitutional as applied to them in that it violates § 1 of the Fourteenth Amendment of the United States Constitution. In essence, they are urging that the State of Maine has no constitutional right to tax their income without conferring benefits upon them, which is tantamount to saying that no nonresident who earns income within the State is liable to taxation under the provisions of the Maine Income Tax Law. We do not give this Act such a limited construction.

Maine is bordered by the Canadian Provinces of New Brunswick and Quebec and by the State of New Hampshire. Under the Plaintiffs' reasoning, it would be possible for countless numbers of persons to enjoy the right to work in Maine without incurring any liability for sharing the cost of government. We would, in effect, be allowing such persons free use of our court systems, highways, police and fire protection, not to mention many other costly state sponsored public services.[2] Gov-

---

2. We are mindful of the large numbers of nonresidents who find lucrative employment in various Maine enterprises devoted to recreation, lumbering and agriculture, all of which benefit directly from the efforts of the Inland Fish and Game, Sea and Shore Fisheries, Forestry and Agricultural Departments.

ernment cannot properly function without the support of those who derive benefits from it.

Plaintiffs base their argument upon the contention that they derive *no benefit* from the State sufficient to warrant their contribution to its operation. This problem was answered in *Kiker*, supra. The Court stated at *294–295* of 31 A.2d:

"It is clear that in classifying persons for taxation an obligation on the part of the taxing power to make available some benefit to them must exist. We are satisfied * * * that such obligation does exist * * *. Plaintiff may at all times use the streets, bridges and other facilities * * * and also has the benefit of protection of its police and fire departments when engaging in business or pleasure * * * as well as many other advantages. * * * "

The Plaintiffs' constitutional rights are not infringed. They receive a sufficient benefit from the State to justify the imposition of this tax.

### III

In advancing their final argument the Plaintiffs seek to draw an analogy from those cases involving a tax on interstate carriage of persons and those dealing with a tax on the profits of foreign corporations doing business within a given state, which have been held to be an unconstitutional burden on interstate commerce. These cases are not analogous to the facts before us since the Maine Income Tax Law seeks to tax only that portion of income "derived from sources within this State * * *." 36 M.R.S.A. § 5140. Furthermore, § 5128 provides for a tax reduction when a taxpayer is subject to an income tax in another state, "on that portion of the taxpayer's income which is subjected to tax in both jurisdictions * * *." The Plaintiffs' taxable income was produced solely from an area within the taxing jurisdiction of Maine and cannot be considered as any burden, directly or indirectly, on interstate commerce. Arnold v. Berra (Mo.1963), 366 S.W.2d 321. See also *Kiker*, supra, and Shaffer v. Carter (1920), 252 U.S. 37, 40 S.Ct. 221, 64 L. Ed. 445.

The order which, by agreement, brought the case before us stipulated that this Court should "render such decision as the rights of the parties require." Accordingly, the entry is

*Remanded to the Superior Court for entry of an order denying the appeal.*

*All Justices concurring.*