**Karl and Lucille STEVENS**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued Jan. 30, 1990.
Decided March 15, 1990.

---

David S. Peck (orally), Robert E. Dunn, Jr., Asst. Attys. Gen., Concord, N.H., for plaintiff.

James E. Tierney, Atty. Gen., Clifford B. Olson (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

CLIFFORD, Justice.

This appeal challenges the method used by the State of Maine in taxing the Maine source income of nonresidents. Because there are no constitutional violations resulting from Maine's taking into account non-Maine source income in calculating the graduated rate of income tax to be imposed on the nonresident's Maine source income, we affirm the judgment of the Superior Court (Kennebec County, *Brody, C.J.*) upholding the defendant State Tax Assessor's denial of a tax refund to the plaintiffs, Karl and Lucille Stevens.

The Stevenses, husband and wife, are residents of New Hampshire. During 1986, Karl Stevens earned income in Maine

at the Portsmouth Naval Shipyard in Kittery, while Lucille Stevens worked in New Hampshire. The Stevenses also reported interest, dividend and capital gain income from non-Maine sources. After calculating their Maine tax liability in accordance with the law and filing a joint nonresident Maine income tax return for 1986, the Stevenses filed a claim for a refund for overpayment of taxes.[1] The refund was denied by the State Tax Assessor as was a petition for reconsideration. *See* 36 M.R.S.A. §§ 5280, 151 (1978 & Supp.1989). The Assessor's denial of the refund was affirmed in the Superior Court in the action brought by the Stevenses pursuant to 5 M.R.S.A. § 11002(1) and M.R.Civ.P. 80C. Their appeal to this court followed.

Maine's income tax law has graduated or progressive features, with the applicable rates at which taxes are calculated increasing as the amount of the taxpayer's income increases. *See* 36 M.R.S.A. § 5111 (Supp. 1989). Maine income taxes paid by a nonresident taxpayer are subject to the graduated tax rate. The graduated scheme of taxation is implemented by calculating the tax rate upon the nonresident's entire federal taxable income, and applying that rate to the Maine source income of the nonresident. Specifically, the graduated rate is determined by reference to the federal adjusted gross income (less deductions and exemptions) and the tax, so calculated, is reduced by the ratio of the non-Maine source income to the total income.[2]

The well-established right of the State of Maine to tax income earned within its borders by a nonresident is not challenged by the Stevenses. *Barney v. State Tax Assessor*, 490 A.2d 223, 225 (Me.), *cert. denied*, 474 U.S. 828, 106 S.Ct. 90, 88 L.Ed.2d 73

1. The refund claim for $681, based upon an amended return that excluded all non-Maine source income, was filed though the Office of the Attorney General of the State of New Hampshire. The Stevenses continue to be represented by the Attorney General of New Hampshire in this appeal.

2. The statute applying to 1986 tax returns, 36 M.R.S.A. § 5111(4) (1985), *as amended by* P.L. 1987, ch. 504, § 7, provided that:

[a] tax is imposed upon the Maine income of every nonresident individual. The amount of the tax shall be equal to the tax computed under this section and chapter 805 as if the nonresident were a resident, less applicable tax credits ... and multiplied by the ratio of his Maine adjusted gross income ... to his entire federal adjusted gross income, as modified by section 5122.

36 M.R.S.A. § 5111(4) has been repealed and replaced by a new section 5111. *See* P.L. 1987, ch. 819, § 2 (effective Jan. 1, 1988).

(1985); *Morse v. Johnson,* 282 A.2d 597, 599–600 (Me.1971). The Stevenses' contention is that inclusion of their non-Maine source income to determine the *rate* at which their Maine income is to be taxed violates their due process,[3] privileges and immunities,[4] and equal protection[5] rights under the Constitution of the United States. That contention has been squarely addressed and clearly rejected. *See Maxwell v. Bugbee,* 250 U.S. 525, 538–43, 40 S.Ct. 2, 5–7, 63 L.Ed. 1124 (1919); *see also Wheeler v. State,* 127 Vt. 361, 249 A.2d 887, 890–91, *appeal dismissed for want of a substantial federal question,* 396 U.S. 4, 90 S.Ct. 24, 24 L.Ed.2d 4 (1969) (per curiam). We reject it as well.

In *Maxwell,* the United States Supreme Court upheld the authority of a state (New Jersey) to base an inheritance tax rate to be applied to property subject to its jurisdiction upon all property of the estate, including property that could not lawfully be taxed. *Id.* at 539–40, 40 S.Ct. at 6. "When the State levies taxes within its authority, property not in itself taxable by the State may be used as a measure of the tax imposed." *Id.* at 539, 40 S.Ct. at 6.

Courts of other jurisdictions have applied this principle to the computation of a nonresident's state income taxes. In *Wheeler,* a case strikingly similar to the instant one, Vermont's nonresident graduated tax rate, determined upon the total taxable income of nonresidents, including non-Vermont source income, was applied to the Vermont source income of Wheeler, a New Hampshire resident. Wheeler's Vermont source income comprised 25 percent of his total income. *Id.* 249 A.2d at 890–91. Wheeler's constitutional contentions, identical to those made by the Stevenses, were rejected first by the Vermont court and later by the United States Supreme Court, which dismissed the case for want of a substantial federal question, a disposition that the Stevenses concede has the precedential effect of a decision on the merits. *Hicks v. Miranda,* 422 U.S. 332, 343–45, 95 S.Ct. 2281, 2288–90, 45 L.Ed.2d 223 (1975).

Similar constitutional attacks were likewise rejected in *United States v. Kansas,* 810 F.2d 935 (10th Cir.1987). "The reasoning of the[se] cases [upholding taxation schemes similar to Maine's] is that property not itself taxable can be used as a measure of the tax imposed on property within the state and that to do so is 'in no just sense a tax on the foreign property.'" *Id.* (quoting *Maxwell,* 250 U.S. at 539, 40 S.Ct. at 6) (discussing and dismissing due process violations).

The State's taxation of the Stevenses does not deprive them of their property without due process. Nor does it violate their constitutionally protected privileges and immunities or deny them equal protection of the law. Privileges and immunities and equal protection rights would be implicated only if the State's income tax scheme discriminated against nonresidents when compared to residents similarly situated. *Barney,* 490 A.2d at 225; *Wheeler,* 249 A.2d at 889–91. Although the Stevenses point out that they paid more Maine income tax on their Maine source income than a Maine resident whose *total* income equals the Stevenses' Maine source income (because the Stevenses paid at a higher graduated tax rate), their comparison misses the mark. There is no improper discrimination in the application of Maine's income tax because similarly situated residents and nonresidents are taxed at an equal rate. The tax rate applied to residents with gross incomes identical to that of the Stevenses would be the same as that paid by the Stevenses. Unlike the Stevenses, however, who paid taxes on only their Maine source income, Maine residents would have that rate applied to all of their adjusted gross income regardless of the source.[6]

3. U.S. Const. amend. XIV.

4. U.S. Const. art. IV, § 2.

5. U.S. Const. amend. XIV.

6. Were the Stevenses residents of Maine, a state income tax of $2812, or 4.96 percent of their federal adjusted gross income of $56,674, would have been due. As nonresidents, the Stevenses paid $1596, or 4.96 percent of their Maine source income of $32,179.