OPINION OF THE COURT
Kaye, J.
Plaintiffs Lawrence Brady and Barbara Brady are married *600 and reside in New Jersey. Plaintiffs Deborah Labovitz and Judah Labovitz are married and reside in Pennsylvania. At all relevant times, Lawrence Brady and Deborah Labovitz earned income in New York, and Barbara Brady and Judah Labovitz earned income outside New York; in addition, the Labovitzes had a combined adjusted gross income of more than $100,000 and received unearned income from non-New York sources. Both couples filed joint Federal tax returns. Plaintiffs challenge New York’s method of determining the nonresident tax on income earned in New York, whereby New York takes into account both New York and non-New York source income in calculating the tax rate to be applied to the New York income.
The laws at issue are Tax Law § 601 (d) and (e), sections of the Tax Reform and Reduction Act of 1987 (L 1987, ch 28) (TRARA). Under Tax Law § 601 (e) (1), the tax of a nonresident is first calculated "as if [the taxpayer] were a resident.” Thus, the nonresident’s tax base (as that term is used by the parties) is determined by applying the appropriate graduated rate in Tax Law § 601 (a) through (c) to the taxpayer’s total income from all sources (less any statutory deductions, exemptions or credits [Tax Law §§ 606, 611 (a)]).[1] The taxpayer’s total income is derived from "New York adjusted gross income” (Tax Law § 611 [a]), which is determined by reference to the taxpayer’s "federal adjusted gross income” (Tax Law § 612 [a]).
Residents pay their entire tax base. For nonresidents, however, the amount is reduced by the percentage of income earned in New York compared to total income (Tax Law § 601 [e] [1]). Therefore, while residents and nonresidents with the same total income are taxed at the same rate, the nonresident pays tax only on the percentage of income attributable to New York.
Assuming, for example, an effective tax rate of 6% for incomes of $25,000 or less, and an effective tax rate of 7% for incomes above $25,000, a resident with total income of $50,000 *601 would have a tax base of $3,500 and would pay that amount. So would a nonresident with the same income entirely attributable to New York sources. However, a nonresident with $25,000 of New York income and $25,000 of non-New York income, while having the same $3,500 tax base, would pay half that amount — $1,750—because only half of the income would be subject to the New York tax.
In addition, in 1988 only, the taxpayer’s effective rate was increased with reference to unearned income if the taxpayer had New York adjusted gross income over $100,000 (Tax Law § 601 [d]). Thus, the hypothetical resident taxpayer with a total 1988 income of $110,000, including total unearned income of $10,000 from non-New York sources, would have an initial tax base of $7,700. That tax base would be increased by $20, which is derived by multiplying $10,000 by 2% and then multiplying the resulting figure of $200 by (110,000-100,000)/ 100,000. A resident with such income would be liable for a tax of $7,720. A nonresident, however, would pay only $7,025, since the nonresident’s tax base would be apportioned by the percentage of New York income (here 100,000/110,000 or 91%).
Plaintiffs challenge this tax scheme, complaining that New York unconstitutionally disadvantages nonresidents. They urge us not to compare residents and nonresidents of the same total income, but to look only to New York income in reviewing the legality of the tax rate. Thus, plaintiffs argue, the same tax rate must apply to a resident with total income of $25,000 and a nonresident with New York income of $25,000, regardless of the nonresident’s total income reported on the tax return.
Plaintiffs seek a declaration, for themselves and a class of similarly situated persons, that these provisions violate due process because presumably higher taxes arising from higher tax rates demonstrate that New York is in effect impermissibly taxing out-of-State income. They also claim the scheme violates the constitutional Privileges and Immunities and Equal Protection Clauses since a New York resident having no income other than New York earnings may pay a lower tax than a nonresident with the same New York earnings who has additional income from other sources.
Supreme Court denied plaintiffs’ motion for class certification and granted defendants’ motion for summary judgment dismissing the complaint. The Appellate Division modified by *602 declaring Tax Law § 651 (b) (2) unconstitutional and remitting for further proceedings on that issue, but otherwise affirmed. On plaintiffs’ appeal from the Appellate Division order, we now affirm.[2]
I.
Plaintiffs first claim that by setting tax rates with reference to adjusted gross income, New York taxes non-New York income, thus taking property in violation of due process. They point to three instances: (1) income of the nonresident taxpayer earned outside New York and included on the taxpayer’s Federal return; (2) income of the nonresident spouse earned outside New York and included on the taxpayer’s joint Federal return; and (3) for 1988 only, unearned out-of-State income referenced for purposes of the section 601 (d) surcharge on those with a total adjusted gross income over $100,000. Each of these is included in the tax base solely for purposes of rate determination. Thus, the inquiry with respect to each category is the same: in these circumstances, is out-of-State income being impermissibly taxed?
We start with the proposition that legislative enactments enjoy a presumption of constitutionality (Montgomery v Daniels, 38 NY2d 41, 54). States, of course, have the power to tax nonresidents on income derived from sources within their borders (Travis v Yale & Towne Mfg. Co., 252 US 60, 75; Shaffer v Carter, 252 US 37, 52). Similarly, progressive tax systems, which apportion the tax burden based on the taxpayer’s ability to pay, are unquestionably constitutional (Brushaber v Union Pac. R. R., 240 US 1, 25), and indeed are "widespread among the United States and firmly imbedded in the federal tax structure” (Wheeler v State, 127 Vt 361, 365, 249 A2d 887, 890, appeal dismissed for want of a substantial Federal question 396 US 4).[3]
*603 It has long been the rule that States may refer to nontaxable out-of-State assets in setting their rates for taxable assets (see, Atlantic & Pac. Tea Co. v Grosjean, 301 US 412; Maxwell v Bugbee, 250 US 525). Maxwell involved a New Jersey inheritance tax that required the inclusion of the entire estate of the decedent, wherever located, to determine the rate by which the New Jersey property would be taxed. The actual tax was calculated, as here, by applying the rate applicable to the entire estate, but then reducing the tax to reflect only the percentage of the estate located in New Jersey. The United States Supreme Court found the statute constitutional, holding:
”[T]he subject-matter here regulated is a privilege to succeed to property which is within the jurisdiction of the State. When the State levies taxes within its authority, property not in itself taxable by the State may be used as a measure of the tax imposed * * * In the present case the State imposes a privilege tax, clearly within its authority, and it has adopted as a measure of that tax the proportion which the specified local property bears to the entire estate of the decedent * * * It is in no just sense a tax upon the foreign property.” (Id., at 539.)
Similarly, in Grosjean, the Supreme Court upheld a Louisiana license tax on in-State chain stores that was calculated on the basis of the taxpayer’s nationwide operation, stating ”[i]n legal contemplation the state does not lay a tax upon property lying beyond her borders” (id., at 425).
Since Maxwell and Grosjean, high courts in other States have upheld tax schemes similar to the one at issue here. (See, Stevens v State Tax Assessor, 571 A2d 1195 [Me], cert denied 498 US 819; Wheeler v State, 127 Vt 361, 249 A2d 887, supra; cf, United States v State of Kansas, 810 F2d 935 [10th Cir] [upholding validity of including nonresident military income— which was not taxable by State — in determining State tax rate]; Aronov v Secretary of Revenue, 323 NC 132, 371 SE2d 468 [upholding requirement that nonresident taxpayer reduce net operating loss from North Carolina partnership by amount of out-of-State income], cert denied 489 US 1096.)
As in Stevens and Wheeler, the subject matter here regulated is a tax on in-State income, which is within the *604 jurisdiction of the State. When the State levies taxes within its authority, "property not itself taxable can be used as a measure of the tax imposed on property within the state and * * * to do so is 'in no just sense a tax on the foreign property.’ ” (United States v State of Kansas, 810 F2d, at 938, supra [quoting Maxwell v Bugbee, 250 US, at 539, supra].)
Plaintiffs’ contention that Maxwell and Grosjean have been superseded by Supreme Court cases dealing with business taxation and interstate commerce is without basis. Those cases address the constitutionality of directly taxing multistate corporate income, which turns upon whether such income is attributable to a "unitary” business with a sufficient nexus in the taxing State to justify the exercise of the State’s taxing authority. In Allied-Signal, Inc. v Director, Div. of Taxation (504 US —, 119 L Ed 2d 533 [June 15, 1992]), for example, the issue was whether New Jersey could tax the capital gain realized by a non-New Jersey company on the sale of a New Jersey company. Similarly, Complete Auto Tr. v Brady (430 US 274) and its progeny address whether a State can tax interstate corporate income in exchange for the privilege of carrying on its business. As even the dissent acknowledges (dissenting opn, at 606, n 1), neither line of cases controls the present issue. Here, there is no question about which of the jointly reported income is taxable and which not; the question is how to determine the rate on income clearly subject to New York tax.
Thus, plaintiffs’ due process challenge was correctly rejected by the courts below.
II.
Plaintiffs’ alternative contention — an undifferentiated argument under the constitutional Privileges and Immunities and Equal Protection Clauses — also was properly rejected: TRARA treats similarly situated residents and nonresidents the same.
The Privileges and Immunities Clause of the United States Constitution was designed " 'to place the citizens [including residents] of each State upon the same footing with citizens [and residents] of other States, so far as the advantages resulting from citizenship in those States are concerned.’ ” (Supreme Ct. of Va. v Friedman, 487 US 59, 64, quoting Paul v Virginia, 8 Wall [75 US] 168, 180; see also, Austin v New Hampshire, 420 US 656.) Pursuit of an occupation outside *605 one’s home State is certainly a right protected by this clause (see, Hicklin v Orbeck, 437 US 518, 524-525; Austin v New Hampshire, 420 US 656, supra; Toomer v Witsell, 334 US 385, 396). However, to establish an unwarranted burden on their privileges and immunities, plaintiffs must demonstrate disadvantage as against others in a similar position (Stevens v State Tax Assessor, 571 A2d, at 1197, supra; Wheeler v State, 249 A2d, at 891, supra). This they have failed to do. (Compare, Austin v New Hampshire, 420 US 656, supra [taxing nonresidents but not residents violates privileges and immunities]; Spencer v South Carolina Tax Commn., 281 SC 492, 316 SE2d 386 [statute that denied certain deductions only to nonresidents violated privileges and immunities], affd, by an equally divided court 471 US 82.)
Plaintiffs would have us compare them to New York residents with a total income equivalent to plaintiffs’ New York income alone. Plaintiffs would urge, for example, that a nonresident earning $20,000 in New York, but with reported income of $100,000, should be taxed at the same rate as a resident with an income of $20,000. But plaintiffs’ hypothetical taxpayers are not similarly situated in terms of ability to pay. Similarly situated taxpayers are those with the same total income.
Again, plaintiffs have failed to establish that the challenged tax is unconstitutional.
III.
Plaintiffs’ real quarrel, in the end, is with the graduated tax. A system of progressive taxation apportions the tax burden based on ability to pay — higher income taxpayers can pay more and are therefore taxed at a higher rate than lower income taxpayers. This system does not implicate the State or Federal Constitution so long as the rates are applied, as here, in a nondiscriminatory manner and only to taxable New York income.
Finally, we note that the dissent is flawed not only in its reliance on recent Supreme Court decisions dealing with corporate tax, but also in its claim to logic, common sense and economic reality. In fact, those considerations — as well as precedent — support the challenged tax, which has the practical effect of equalizing tax rates among persons whose total incomes, as reported to taxing authorities, are the same.
Accordingly, the order of the Appellate Division should be *606 affirmed, with costs, and the certified question answered in the negative.

. In the trial court and Appellate Division, plaintiffs also challenged Tax Law § 651 (b) (2), which required married nonresidents to file a joint nonresident tax return in New York if they filed a joint Federal return. The Appellate Division found this provision unconstitutional, as it exposed a nonresident spouse with no New York connections to civil and criminal liability in New York by virtue of that spouse’s signature on the State tax return. The State has not appealed that determination. The question before us — whether in fixing the tax rate, New York can refer to spousal income included in the total adjusted gross income on the couple’s joint Federal return — is unaffected by that holding.

. Our decision on the merits renders it unnecessary to address the denial of class action status insofar as it relates to the claims at issue on this appeal. With respect to the Appellate Division’s determination that section 651 (b) (2) is unconstitutional — which is not before us on the merits —both the motion court and the Appellate Division found plaintiffs had not met their burden of establishing that the proposed class action would be the superior method for determining the controversy, pointing particularly to notification burdens weighed against speculative allegations of injury to the putative class. We see no reason to overturn that conclusion.

. Dismissal for want of a substantial constitutional question operates as a decision on the merits (see, Washington v Yakima Indian Nation, 439 US 463, 476, n 20).