Hancock, Jr., J.
(dissenting). No State may impose a tax on income earned outside of the State by a nonresident. That is settled constitutional law. Under the statute at issue, New York considers income earned outside of the State for purposes of determining the rate at which it will tax a nonresident’s New York income. Because New York has a progressive tax rate structure, the result of including the out-of-State income is a higher tax rate and a higher tax on the New York income. The question in this case is whether by considering the nontaxable out-of-State income in determining the tax rate on the New York income, the State is, in reality, taxing the out-of-State income and doing indirectly what it cannot do directly.
The answer to the question, of course, is the one dictated by logic and common sense: the State is taxing the outside income. Including it results in a higher tax bracket and the nonresident pays more tax on the New York income. But, the State maintains that this is not so. There is a distinction, it says, which "is straightforward and obvious. State taxes on nonresidents may be measured by income outside the State as long as they are not imposed upon such income” (respondents’ brief, at 17 [emphasis added]).
While the claimed distinction between taxing out-of-State income and using it as a measure of the tax that is ultimately imposed hardly seems "straightforward” or "obvious”, my colleagues are apparently content with it and find satisfactory precedent in two decisions of the Supreme Court — one handed down 73 years ago, Maxwell v Bugbee (250 US 525), and the other 55 years ago, Atlantic & Pac. Tea Co. v Grosjean (301 US 412). I believe that these decisions do not control this case. They do not reflect the Supreme Court’s express rejection of labelling and formalism and its adoption instead of economic reality as the current approach to problems involving State taxation of out-of-State income of nonresidents (see, e.g., Mobil Oil Corp. v Commissioner of Taxes, 445 US 425, 440-441; Complete Auto Tr. v Brady, 430 US 274, 279).[1] For this reason, I respectfully dissent.
*607 The case of Maxwell v Bugbee (250 US 525, supra) — the basis of the Attorney-General’s "straightforward and obvious” distinction between measuring a tax on out-of-State income and taxing out-of-State income — was decided in 1919 by a vote of five to four.[2] The Maxwell majority, adopting the more formalistic approach of that time, dismissed the due process objection to the inclusion of out-of-State property in determining the tax on the privilege of transferring property within the State. It simply announced, without explanation of its reasoning, that the inclusion of the out-of-State property does not result in a tax on it, but "merely affords a measure of the tax imposed” (Maxwell v Bugbee, supra, at 535).
The soundness of the Maxwell decision has been questioned by the Court itself (see, Frick v Pennsylvania, 268 US 473, 495 [Maxwell "is on the border line, as is evidenced by the dissent of four members of the Court”]; see also, Hellerstein, Some Reflections on the State Taxation of a Nonresident’s Personal Income, 72 Mich L Rev 1309, 1317, n 53 [Maxwell riddled with "dubious logic”]; Lowndes, Rate and Measure in Jurisdiction To Tax — Aftermath of Maxwell v. Bugbee, 49 Harv L Rev 756, 770 [it is difficult "to imagine anything more iniquitously unfair than the application of the Maxwell v. Bugbee formula to income taxation”]).
Justice O. W. Holmes, Jr., viewing the substance of the statute in Maxwell and its effect on the taxpayer with the frank realism for which he was noted,[3] dissented. Joined by *608 Chief Justice White and Justices VanDevanter and McReynolds, Justice Holmes wrote:
"It seems to me that when property outside the State is taken into account for the purpose of increasing the tax upon property within it, the property outside is taxed in effect, no matter what form of words may be used. It appears to me that this cannot be done, even if it should be done in such a way as to secure equality between residents in New Jersey and those in other States” (Maxwell v Bugbee, supra, at 544 [emphasis added]).
Consistent with Justice Holmes’ pragmatic approach, in the past half century, the Supreme Court has moved away from its earlier reliance on the Maxwell-type of formalism and embraced a method of analysis based on "the practical effect of a challenged tax” (Mobil Oil Corp. v Commissioner of Taxes, supra, at 443) and on "economic realities” rather than "formal phrasing” (Complete Auto Tr. v Brady, supra, at 278-280 [overruling Spector Motor Serv. v O’Connor, 340 US 602, which had deemed "irrelevant any consideration of the practical effect of the tax” (430 US, at 278)]; see also, Allied-Signal, Inc. v Director, Div. of Taxation, 504 US —, —, 119 L Ed 2d 533, 545-546; ASARCO Inc. v Idaho State Tax Commn., 458 US 307, 319; Exxon Corp. v Wisconsin Dept, of Revenue, 447 US 207, 223-224; Wisconsin v J. C. Penney Co., 311 US 435, 444).
If the tax in question is analyzed with the candor employed by Justice Holmes in his Maxwell dissent and by the Supreme Court in its recent decisions, there can be no question that the practical effect of including out-of-State income for the purpose of increasing the rate on the in-State income is a tax on the out-of-State income. The majority does not dispute this proposition. Instead, it cites State cases, which, with no explication, have accepted the Maxwell procedure of deciding by labelling (see, majority opn, at 603 [citing Stevens v State Tax Assessor, 571 A2d 1195 (Me); Wheeler v State, 127 Vt 361, 249 A2d 887]). That Vermont and Maine have cited Maxwell with approval, of course, does not mean that the decision is regarded with favor by the Supreme Court.[4] The Vermont Supreme Court, it should be noted, decided Wheeler in 1969, *609 prior to the Supreme Court cases expressly renouncing the formalistic approach. In Stevens, the Supreme Court of Maine merely followed Wheeler in its uncritical acceptance of Maxwell. Whether the Court will again resort to the Maxwell-type of labelling[5] in order to uphold a taxing scheme — where out-of-State income of the taxpayer and the taxpayer’s spouse is used to increase the tax on the taxpayer’s in-State income— only the Supreme Court can tell us. If the answer should be "yes”, then I respectfully submit that the answer would be inimical to Justice Holmes’ commonsense appraisal of the tax in Maxwell and to the Court’s recent method of analyzing State taxation due process problems by looking at the practical effect and the economic realities rather than "formal phrasing” (Complete Auto Tr. v Brady, supra, at 280; see, e.g., Mobil Oil Corp. v Commissioner of Taxes, supra, at 443). A statute which includes out-of-State income of the taxpayer and the taxpayer’s spouse for the purpose of increasing the tax on the in-State income and which results in such increase imposes a tax on the out-of-State income in violation of the Due Process Clause — no matter how the tax is described. To pretend that it does not endorses a due process violation and works a distinct unfairness on taxpayers such as the New Jersey and Pennsylvania residents in this case.
Judges Titone, Bellacosa and Smith concur with Judge Kaye; Judge Hancock, Jr., dissents and votes to reverse in a separate opinion; Acting Chief Judge Simons taking no part.
Order affirmed, etc.

. That these cases address the extraterritorial reach of corporate taxes, as the majority notes (majority opn, at 604), is of no moment. Their significance for present purposes is not their specific holdings but the methodology employed by the Court in analyzing the statutes: i.e., looking to the practical effect and economic realities of the tax in issue.

. Atlantic & Pac. Tea Co. v Grosjean (301 US 412, supra), involving a chain store tax based on the total number of stores in the chain, is cited by the majority but is not discussed in the opinion. It adds nothing to the argument (see, Hellerstein, Some Reflections on the State Taxation of a Nonresident’s Personal Income, 72 Mich L Rev 1309, 1317, n 53 [Grosjean "may be viewed as a case primarily involving the states’ police power to regulate the growth of chain stores”]).

. See, e.g., Holmes, The Path of the Law, 10 Harv L Rev 457; Summers, Pragmatic Instrumentalism in Twentieth Century American Legal Thought, 66 Cornell L Rev 861, 866-869; Frank, Mr. Justice Holmes and Non-Euclidean Legal Thinking, 17 Cornell LQ 568; Hantzis, Legal Innovation Within the Wider Intellectual Tradition: The Pragmatism of Oliver Wendell Holmes, Jr., 82 Nw U L Rev 541; Lyons, Legal Formalism and Instrumentalism — A Pathological Study, 66 Cornell L Rev 949 (Professor Lyons writes, at 949: "Holmes and those who followed in his wake believed they were rejecting a rigid and impoverished conception of the law [often called 'formalism’] which had, in their view, adversely affected judicial practice. They spawned a collection of doctrines that Professor Summers dubs 'pragmatic instrumen *608 talism’ — fittingly so-called both because they viewed the law as an eminently practical instrument and because they were so strongly influenced by the philosophical pragmatists William James and John Dewey”).

. Indeed, the decision in Wheeler does not address the issue of whether out-of-State income is a permissible consideration in setting the rate of tax *609 on in-State income (see, Hellerstein, Some Reflections on the State Taxation of a Nonresident’s Personal Income, 72 Mich L Rev 1309,1318). The decision, as far as4t concerned due process, addressed only whether Vermont had in fact taxed Wheeler’s out-of-State income.

. Avoiding a due process challenge by proclaiming that the statute "merely affords a measure of the tax imposed” as in Maxwell is the sort of formalism in decision-making which the Court repudiated in J. C. Penney: "|T]he descriptive pigeon-hole into which a state court puts a tax is of no moment in determining the constitutional significance of the exaction. 'In whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect.’ Henderson v. Mayor of New York, 92 U. S. 259, 268. Such has been the repeated import of the cases which only recently were well summarized by the guiding formulation for adjudicating a tax measure, that 'in passing on its constitutionality we are concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it.’ Lawrence v. State Tax Commission, 286 U. S. 276, 280” (Wisconsin v J. C. Penney Co., 311 US, at 443-444, supra).