OPINION OF THE COURT
Marcy L. Kahn, J.
On January 30, 2004, following a bench trial defendant was convicted of attempted assault in the second degree (Penal Law §§ 110.00, 120.05 [1]), assault in the third degree (Penal Law § 120.00 [1]) (three counts), criminal possession of a weapon in the third degree (Penal Law § 265.02 [1]), criminal mischief in the third degree (Penal Law § 145.05), endangering the welfare of a child (Penal Law § 260.10 [1]) (three counts), and aggravated cruelty to animals (Agriculture and Markets Law § 353-a). Prior to the court’s verdict, defendant moved to dismiss the charge of aggravated cruelty to animals on due process grounds, contending that the statute’s definition of “companion animal” was unconstitutionally vague, both facially and as applied to him. This written decision explains the court’s oral decision of January 30, 2004, which denied defendant’s motion in its entirety.
I. Background
The evidence at trial established that bn August 2, 2003, defendant Michael Garcia, wielding a gravity knife, assaulted Emalie Martinez in her home, and also committed various other crimes against Jesus Rabassa, who was her roommate at the time, and Ms. Martinez’s three children, Juan Torres, age 9, Crystal Torres, age 8, and Emalie Ann Torres, age 4. Earlier on that day, defendant had picked up a 10-gallon fish tank containing three pet goldfish belonging to Ms. Martinez’s three children and hurled it into a 47-inch television screen, smashing the television screen and the fish tank; and damaging other *701 property items in the process. Defendant then called nine-year-old Juan into the room and, said, “Hey, Juan, want to see something cool?” Defendant then proceeded to crush under the heel of his shoe one of the three goldfish then writhing on the floor.
II. Discussion
A. Applicable Law
1. The Vagueness Doctrine
It is well established that due process under both the Federal and State Constitutions requires a criminal statute to define an offense with sufficient clarity that a person of ordinary intelligence can understand what conduct is prohibited. (Connally v General Constr. Co., 269 US 385, 391 [1926]; International Harvester Co. v Kentucky, 234 US 216, 221 [1914]; People v Grogan, 260 NY 138, 145-146 [1932].) A statute must also be written in a manner which precludes arbitrary and discriminatory enforcement by the police. (Grayned v City of Rockford, 408 US 104, 108-109 [1972]; People v Nelson, 69 NY2d 302, 306 [1987].) Accordingly, a statute is unconstitutionally vague if a potential offender or a police officer cannot determine the conduct proscribed by the statute. (People v Stuart, 100 NY2d 412 [2003].) Where a question is raised as to the constitutionality of a statute, the party raising the challenge bears the burden of establishing that the provision is unconstitutional beyond a reasonable doubt. (People v Scalza, 76 NY2d 604 [1990].)
A party may challenge a statute as being unconstitutionally vague on its face or in its particular application. (People v Stuart, supra, 100 NY2d at 421.) Upon raising a facial vagueness argument, the challenger has the burden of demonstrating that the statute is impermissibly vague in all of its applications. (United States v Salerno, 481 US 739 [1987].) That is, for a facial challenge to succeed, the moving party must show that the statute is permeated by vagueness to the point where “no standard of conduct is specified at all” (Coates v City of Cincinnati, 402 US 611, 614 [1971]), or that the statute is so vague that it permits a police officer to exercise unfettered discretion in every single case (People v Bright, 71 NY2d 376, 383-384 [1988]). An “as-applied” challenge, by contrast, requires a court only to consider whether the statute can be constitutionally applied to the defendant under the particular facts of the case. (Chapman v United States, 500 US 453, 467-468 [1991]; People v Parker, 41 NY2d 21, 24 [1976].)
Every statute is presumed to be constitutional. (Brady v State of New York, 80 NY2d 596, 602 [1992].) Accordingly, with the *702 exception (not relevant here) of a First Amendment context, when a statute is challenged as being vague both facially and as applied, a court must first consider whether the statute is vague as applied to the party making the challenge. (People v Stuart, supra, 100 NY2d at 423; Ulster Home Care v Vacco, 96 NY2d 505, 510 [2001].) If the statute provides the defendant with adequate notice and the police with clear criteria, that will be the end of the inquiry, as a court “will not | strain to imagine marginal situations in which the application of the statute is not so clear.” (People v Nelson, supra, 69 NY2d at 308.) Accordingly, should a defendant’s as-applied challenge fail, the court will have found that there is at least one person, the defendant, to whom the statute may be applied constitutionally, and, therefore, the statute would necessarily be valid on its face and not unconstitutionally vague. (Village of Hoffman Estates v Flipside, Hoffman Estates, Inc., 455 US 489, 495 [1982]; People v Stuart, supra, 100 NY2d at 423.)
2. Agriculture and Markets Law § 353-a
Popularly known as “Buster’s Law,” Agriculture and Markets Law § 353-a was enacted by the Legislature in 1999 after a Schenectady cat named “Buster” was doused with kerosene and set on fire. The law was enacted to “increase the penalty for intentionally and without just cause seriously injuring or killing . . . dogs, cats and other domesticated animals.” (NY Assembly Mem in Support of L 1999, ch 118, 1999 McKinney’s Session Laws of NY, at 1584-1585 [NY Assembly Mem].) Governor Pataki, when signing the legislation, stated that making such conduct a felony will send a “clear message that such cowardly and despicable acts of violence will not be tolerated.” (Governor’s Mem approving L 1999, ch 118, 1999 McKinney’s Session Laws of NY, at 1469.) Finally, the Legislature acknowledged that “[t]he connection between animal abusers and violence towards humans shows that virtually every serial killer had a history of abusing animals before turning their attention to people.” (NY Assembly Mem at 1585.)
Specifically, Agriculture and Markets Law § 353-a (1) provides:
“A person is guilty of aggravated cruelty to animals when, with no justifiable purpose, he or she intentionally kills or intentionally causes serious physical injury to a companion animal with aggravated cruelty. For purposes of this section, ‘aggravated cruelty’ shall mean conduct which: (i) is intended to cause extreme physical pain; or (ii) is done or car *703 ried out in an especially depraved or sadistic manner.”
The statute further states, in pertinent part: “A ‘companion animal’ or ‘pet’ means any dog or cat, and shall also mean any other domesticated animal normally maintained in or near the household of the owner or person who cares for such other domesticated animal.” (Agriculture and Markets Law § 350 [5].)
“Animal,” in turn, is defined in the statute as “every living creature except a human being.” (Agriculture and Markets Law § 350 [1].)
B. Parties’ Contentions
Defendant contends that the definition of “companion animal” fails to provide adequate warning as to which animals Agriculture and Markets Law § 353-a protects, rendering the statute vague on its face and violative of due process. In addition, defendant contends, the statute is vague as applied to him in this case, as a goldfish cannot be considered a companion animal, and, therefore, is not within the terms of the statute. A goldfish, defendant argues, is not a companion animal because: (1) a “domesticated animal” must be a mammal; (2) a “domesticated animal” must breathe air in order to live among humans; (3) a fish does not feel pain; (4) people eat fish; (5) a fish cannot be trained; (6) an owner cannot interact with a fish; and (7) a fish cannot provide company to an owner. Defendant concludes by arguing that a fish maintained in a household is, at best, an “ornament.”
The People contend that the statute is neither vague on its face nor vague as applied to defendant, as it provides adequate notice of the proscribed conduct. The People argue that by expanding the definition of companion animal beyond cats and dogs to include other domesticated animals, the Legislature intended the statute to be read broadly and to include animals other than mammals. Finally, the People contend, the statute’s requirement that the unlawful conduct be for “no justifiable purpose” eliminates any concern that the killing and eating of fish at home would be prohibited under the statute.
C. Analysis
Only one reported decision has addressed the constitutionality of the aggravated cruelty to animals statute. In People v Knowles (184 Misc 2d 474 [Rensselaer County Ct 2000]), the court upheld the constitutionality of the statute against several *704 challenges,* but did not address whether or not the definition of “companion animal” rendered the statute void for vagueness.
1. Principles of Statutory Construction
If a statute is framed in language which is clear and unambiguous, any attempt to construe its language is superfluous. (McKinney’s Cons Laws of NY, Book 1, Statutes § 75, at 168 [1971].) Only where a statute’s language leaves its purpose and the legislative intent uncertain should a court make any attempt at statutory construction. (Id. at 168-169.) Accordingly, a court’s first duty is to examine the natural and obvious meaning of the words and language employed in a statute to determine the intent of the Legislature. (Id. at 170-171; McKinney’s Cons Laws of NY, Book 1, Statutes § 91, at 174; § 94, at 188-191 [1971].)
A statute may utilize ordinary terms I to express ideas which find adequate interpretation in common usage and understanding. (People v Byron, 17 NY2d 64, 67 [1966].) Thus, where a statutory term is not defined in the statute itself, the common meaning of the term is to be applied. (McKinney’s Cons Laws of NY, Book 1, Statutes § 232, at 392 [1971].) Dictionary definitions of words, while not necessarily controlling, may be useful in determining the sense in which a word is used. (McKinney’s Cons Laws of NY, Book 1, Statutes § 234, at 398 [1971].)
If statutory language remains ambiguous after an examination of its plain and ordinary meaning and the legislative intent remains uncertain, a court may look to other sources to determine that intent. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92, at 182-183 [1971].) Accordingly, a court may attempt to glean legislative intent by considering the context of the statute and the mischief the statute seeks to remedy (McKinney’s Cons Laws of NY, Book 1, Statutes § 95, at 196-197 [1971]), the legislative history of the statute (McKinney’s Cons Laws of NY, Book 1, Statutes § 125, at 257 [1971]), and New York State public policy (McKinney’s Cons Laws of NY, Book 1, Statutes § 126, at 262 [1971]). Finally, a court should apply rules of statutory construction which lead to reasonable results and conform to common sense. (McKinney’s Cons Laws of NY, Book 1, Statutes § 143, at 286-290 [1971].)
*705 Applying these rules of statutory construction, I find that the definition of “animal” within the statute, “every living creature except a human being,” is plain and unambiguous. There is nothing within this definition which suggests that an animal as so defined must be a mammal. Indeed, while case law on the subject is rare, this definition of animal has been employed in similar statutory provisions for over 100 years, and courts have held “animal” to include such nonmammals as reptiles and birds. (See People ex rel. Freel v Downs, 136 NYS 440 [NY City Magis Ct 1911] [where statutory definition of animal included “every living creature except the human race,” holding a sea turtle to be an “animal”]; People v Klock, 48 Hun 275 [4th Dept 1888] [where statutory definition of animal included every living creature except the human race, finding a gamecock to be an “animal”].)
Moreover, the Legislature’s statutory definition of “animal” conforms with generally accepted definitions of this term. Thus, an animal is “any living organism except a plant or bacterium, typically able to move about” (Webster’s New World Dictionary 23 [1984]), “an organism of the kingdom Animilia . . . and being distinguished from typical plants” (Webster’s Third New International Dictionary 85 [1993]), and “any living being typically differing from a plant in having the ability to move voluntarily” (Random House Dictionary of English Language 53 [college ed 1969]). Accordingly, this court need not engage in any statutory construction in order to find that a goldfish is an animal.
The most complex word which is undefined within the definition of companion animal is “domesticated.” “Domesticate” is ordinarily understood to mean “to adapt (an animal or plant) to life in intimate association with and to the advantage of [humans].” (Webster’s Third New International Dictionary 671 [1993].) “Domesticated” is also commonly understood and used to mean “tame.” (Id.) These are everyday words which a person of ordinary intelligence would have no difficulty in understanding.
The words which qualify “domesticated animal” in the statute, that is, “normally maintained in or near the household of the owner or person who cares for such other domesticated animal” (Agriculture and Markets Law § 350 [5]), further amplify the statute’s ordinary meaning. Thus, an animal protected under the statute must be cared for and maintained by human beings in or near a human household. Contrary to defendant’s contention, the statute contains no requirement that the domesticated animal be a mammal.
*706 Goldfish are small orange fish often bred by human beings to live in fish tanks. (See Random House Dictionary of English Language 566 [college ed 1969].) It is not uncommon to see this tiny member of the carp family (id.) as a child’s pet, dutifully maintained and cared for by its young human owner. A goldfish is almost always named and spoken to as any household pet might be. Moreover, the demise of a goldfish, as with any pet, often causes its young owner much distress, requiring significant consolation, and necessitates a burial or other dignified disposition of the animal’s remains.
The statutory definition of “companion animal” uses ordinary terms to express ideas which find adequate interpretation in common usage and understanding. (People v Byron, supra, 17 NY2d at 67.) Both a potential offender of ordinary intelligence and a police officer would be adequately informed of the nature of the offense prohibited by the statute. In this case, all three of the goldfish in the aquarium had names given to them by Juan Torres and his siblings. In fact, the children anthropomorphically named their pet goldfish after themselves. Both Juan Torres and his mother regularly cleaned the fish tank and fed the fish. After defendant destroyed the aquarium, Juan’s mother rushed to scoop the fish off the floor and place them into a bowl of water, but defendant killed the fish named “Junior” (Juan’s nickname) before she could complete her task. These facts clearly establish that the goldfish were household pets. It is beyond cavil that a person of ordinary intelligence, including a police officer charged with enforcing the law, would know that the common household pet known as a goldfish is a companion animal intended to be protected under the statute, and that, in particular, Juan Torres’ goldfish was such a companion animal.
Although the natural and obvious meaning of the statutory language makes clear the legislative intent to include goldfish within the protections of the statute, such intent is also demonstrated by New York’s long-standing public policy, under both statutory and case law, to broadly protect all animals from unjustified abuse. Thus, in 1888, a defendant was convicted under a statute prohibiting the use of a premises as a place where people could pay to see animals fight. (People v Klock, supra.) The definition of animal in that statute, almost identical to the definition in Agriculture and Markets Law § 350 (1), was held to protect gamecocks. Similarly, in 1911, a defendant was held to answer the charge of carrying an animal in a cruel man *707 ner by perforating the fins of 65 green sea turtles and stringing them together with a rope. (People v Downs, supra.) In that case, too, a similar definition of animal was found to include turtles, notwithstanding the fact that the animals were being transported for commercial purposes and were not in any sense companion animals. Accordingly, the plain meaning of the statutory language at issue in this case as well as New York public policy dating back to Klock and Downs compels a finding that Juan Torres’ goldfish was a companion animal protected under the statute.
Defendant’s reasons to exclude goldfish from the definition of companion animal are without merit. While no evidence was presented at trial on the issue of whether or not Junior, the goldfish, suffered pain when crushed and killed by the defendant, this court can find no requirement either in the statutory scheme of the Agriculture and Markets Law or in the public policy of our state as expressed in its statutory and common law, indicating that the being which is the object of the statute’s protection must necessarily experience pain in order to come within its purview.
Moreover, while humans can and do kill and eat fish on a regular basis, they do not do so if the fish at issue is a pet goldfish belonging to a young child. The former is for a “justified purpose,” as the statute permits, while the latter is not. People of ordinary intelligence understand that such goldfish are pets, beloved by their owners, and are not to be killed or eaten. Also, the definition of companion animal does not require that the animal at issue be trained or provide company and interaction with a human. Rather, the animal need only be cared for and maintained in or near the household of its human owner. People of ordinary intelligence understand that a pet goldfish meets this definition.
Indeed, the actions defendant took against the goldfish in this case speak to defendant’s understanding that he was killing a companion animal. After awakening Emalie Martinez by threatening to smash the fish tank into her head, defendant hurled it into the family’s entertainment center. Defendant then made a point of summoning Juan into the room to witness defendant’s sadistic and depraved act of destroying a family pet. After piquing the boy’s interest and gaining his attention, and in full view of Emalie Martinez, his mother, defendant then killed the goldfish under his shoe. These actions clearly evince defendant’s understanding and intention of inflicting emotional *708 pain on both the boy and his mother. Indeed, defendant’s killing of Junior, the fish, under these circumstances could only have been undertaken for the purpose of destroying a creature the boy held dear, namely, his pet. '
As Agriculture and Markets Law § 353¡-a is not unconstitutionally vague as applied to defendant, there is at least one person to whom the statute is properly applied, and defendant’s as-applied and facial challenge to the statute must fail. (Village of Hoffman Estates v Flipside, Hoffman Estates, supra; People v Stuart, supra.) Accordingly, defendant’s motion is denied in its entirety.
Conclusion
For all of the foregoing reasons, defendant’s motion is denied in its entirety. ,

 The defendant in Knowles claimed that the statutory definitions of “cruelty” and “aggravated cruelty,” and the lack of definitions for “extreme physical pain” and “especially depraved or sadistic manner,” rendered the statute facially vague. The defendant also claimed that the statute was vague as applied to him, where he was accused of kicking an éight-month-old dog down a walkway, picking it up, and throwing it against a brick wall.