John and Jane **PEET**, Jr., Petitioners,

v.

**COMMONWEALTH of Pennsylvania,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1997.
Decided Jan. 2, 1998.

Richard J. Gromen, Jr., Elizabethtown, for petitioners.

Ronald H. Skubecz, Senior Deputy Atty. Gen., Harrisburg, for respondent.

Before DOYLE and PELLEGRINI, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

John and Jane Peet appeal an order of the Board of Finance and Revenue which affirmed the decision of the Board of Appeals, which had denied the Peets' petition for a refund based on their 1992 Pennsylvania personal income tax return.

The relevant facts of the case have been stipulated to by the parties pursuant to Pa. R.A.P. 1571(f). In 1992, the Peets filed both Pennsylvania and Delaware personal income tax returns. On the Delaware return, the Peets reported to Delaware an adjusted gross income [1] of $299,739 and a taxable income of $254,781. Unlike Pennsylvania's flat-rate income tax, Delaware's income tax is on a graduated scale and progressive. To calculate an individual's tax liability, the taxpayer's total taxable income from all sources is first interpolated into a tax rate table to arrive at a tax rate. This rate is then prorated to determine the Delaware tax liability. The proration percentage is derived by dividing the "Modified Delaware Source Income" [2] (Delaware Income), by the Delaware adjusted gross income [3] (total income). In the present case, the Peets' proration percentage based on their total taxable income was 28.00%. This figure was then multiplied by their total tax liability at that rate, $18,924, to arrive at a net total tax due to the state of Delaware of $5,299.[4]

The Peets likewise filed a Pennsylvania personal income tax return entering income

---

1. Delaware Code Title 30, § 1101 provides as follows:

   Any term used in this chapter shall have the same meaning as when used in a comparable context in the laws of the United States referring to federal income taxes, unless a different meaning is clearly required.

   *Id.* Thus, Delaware "adjusted gross income," is that which is defined by 26 U.S.C. § 62(a), and means income from whatever source derived minus permitted deductions.

2. Pursuant to Delaware Code Annotated, Title 30, Section 1122, "[t]he modified · Delaware source income of a nonresident individual means that part of such individual's federal adjusted gross income and modifications provided for under § 1106 of this title **derived from sources within this State** determined under § 1124 of

this title." Del.Code Ann. tit. 30, § 1122 (emphasis added).

3. To simplify the explanation of Delaware's income tax formula, the formula first requires the taxpayers to compute their adjusted gross income and taxable income and, based on that income, then establishes a tax rate. If a taxpayer has out-of-state income, that income is used to establish the Delaware income tax *rate* and that rate is progressive. That progressive tax rate is the rate which Delaware applies to Delaware income.

4. The Peets claimed a $7,200 credit for taxes withheld by Delaware, which entitled them to a refund in the amount of $1,901, which Delaware sent to the Peets.

from the following sources in the following amounts: 1) $197,426 entered as compensation; 2) $18,314 entered as interest; 3) $28,024 entered as dividends; and 4) $59,533 entered as gains. The Peets claimed a credit of $9,600 for Pennsylvania tax withheld, as well as a $5,299 credit for income tax paid to the state of Delaware. The Peets' total Pennsylvania tax liability, based on a tax rate of 2.95%, was $8,947. As a result of the credits for the taxes withheld and the out-of-state credit for the Delaware tax paid, the Peets' 1992 Pennsylvania income tax return indicated an overpayment of $5,952, which the Peets requested as a refund.

Upon reviewing the Peets' return, the Department of Revenue determined that the Peets were only entitled to a credit of $2,514 as a result of their Delaware income tax, and not a credit of $5,299, the amount of the income tax they actually paid to Delaware. The Department of Revenue arrived at this figure through the application of Section 314 of the Pennsylvania Tax Reform Code of 1971 (Tax Code).[5] Section 314(b) provides as follows:

> The credit provided under this section shall not exceed the proportion of the tax otherwise due under this article that the amount of the taxpayer's **income subject to tax** by other jurisdiction bears to his entire income.

72 P.S. § 7314(b) (emphasis added).

Applying this section, the Department calculated the Peets' credit by dividing their total taxable Delaware income ($85,204) by their entire taxable income ($303,297). This figure yielded the proportion of the Peets' Delaware income, approximately 28%, in relation to their total income. This figure was then multiplied by the Peets' Pennsylvania tax liability ($8,947) to arrive at a rounded figure of $2,514, the amount the Department indicated as the Peets' credit for taxes paid to Delaware. The Peets appealed the Department's decision to the Department of Revenue Board of Appeals, which affirmed the decision of the Department.[6] The Peets appealed that decision to the Board of Finance and Revenue, which also affirmed the decision. This appeal followed.

On appeal,[7] the Peets argue that the Commonwealth erred in interpreting the meaning of "income subject to tax," as that term is used in Section 314 of the Revenue Code. Specifically, the Peets argue that, because their entire gross income was used in the calculation of their Delaware tax liability, their entire income was "income subject to tax" by Delaware, and, therefore, they should be entitled to a credit for the entire tax paid to Delaware rather than a mere percentage of that tax.

In response, the Commonwealth asserts that "income subject to tax" for purposes of Section 314(b) of the Revenue Code is limited to income that is both derived from another jurisdiction and is also taxed by that jurisdiction.

These arguments present us with an issue of first impression, *i.e.*, whether income is "subject to tax" in another jurisdiction when it is used only to calculate the tax *rate* in that jurisdiction. Thus, we must construe not only the Pennsylvania tax credit provision but also the Delaware taxation system, as well as the interplay between the two.

This issue arises, of course, because Delaware uses a taxpayer's total income to establish a tax *rate* first, which rate is progressive,

---

5. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101–10004.

6. As part of their appeal, the Peets sought a refund in the amount of $5,952.

7. Although our normal standard of review of governmental agency determinations does not permit this Court to substitute its discretion for that of the agency absent a showing of bad faith, capricious action or an abuse of discretion, that standard does not apply to our review of decisions of the Board of Finance and Revenue. *Norris v. Commonwealth*, 155 Pa.Cmwlth. 423,

625 A.2d 179 (1993). When reviewing a decision of the Board of Finance and Revenue, this Court has the broadest discretion because, although the case is brought under our appellate jurisdiction, the Court essentially performs the functions of a trial court. *Consolidated Rail Corporation v. Commonwealth*, 679 A.2d 303 (Pa.Cmwlth.1996), *aff'd*, 547 Pa. 453, 691 A.2d 456 (1997). Additionally, although the stipulations entered into in the present case are binding and conclusive as to the facts, this Court may draw its own legal conclusions from those facts. *Brown v. Commonwealth*, 670 A.2d 1222 (Pa.Cmwlth.1996).

and then applies that tax rate to Delaware income; whereas Pennsylvania uses a flat tax rate of 2.95% across the board on all income and does not need to establish a rate based upon a progressively graduated scale.[8]

■ The power of a state to tax a nonresident's income that is derived within the state is well established. *See Travis v. Yale & Towne Manufacturing Co.*, 252 U.S. 60, 40 S.Ct. 228, 64 L.Ed. 460 (1920). However, this power is not without limitation. In order for a state to tax income derived within its borders constitutionally, there must be a connection between the jurisdiction and the income, and the tax must be applied equally to residents and nonresidents alike. *E.g., Miller Brothers Co. v. Maryland*, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744 (1954). Absent these conditions, the taxation would violate constitutional principles of equal protection and due process, as well as the privileges and immunities of citizenship contained in Article IV, Section 2 of the United States Constitution.[9] *Id.*

States, such as Delaware, that utilize a graduated tax scale to compute tax liability consider an individual's entire gross income, as that term is used in the federal taxation system, to establish a rate of taxation. *See* Kansas Stat. Ann. § 79–32, 110(b); Me.Rev. Stat. Ann. tit. 36, § 5111; New York Tax

Law § 631; Vt. Stat. Ann. tit. 32, § 5811(1). The graduated system apportions tax liability based on the taxpayer's fiscal ability to pay. The applicable tax rate is then applied only to the income derived from that state to arrive at the tax liability.

Thus, as in the present case, as a result of Delaware's graduated tax rate, a taxpayer with taxable income of $85,000 from Delaware and $85,000 from another state, which is a total of $170,000 for tax purposes, will pay more tax to Delaware on the Delaware income than an individual who has only $85,000 in total income, albeit all earned in Delaware. Although the process of considering otherwise non-taxable income in arriving at a tax *rate* is not taxpayer-friendly, as early as 1919, the United States Supreme Court concluded that this practice was constitutional. *See Maxwell v. Bugbee*, 250 U.S. 525, 40 S.Ct. 2, 63 L.Ed. 1124 (1919); *see also Wheeler v. State*, 127 Vt. 361, 249 A.2d 887 (1969). The *Maxwell* Court noted that "[w]hen the State levies taxes within its authority, property not in itself taxable by the State may be used as a measure of the tax imposed." *Id.* at 539, 40 S.Ct. at 6 (emphasis added). Although the issue in *Maxwell* involved an estate tax, the principles of taxation in that case have been applied to personal income taxation as well. *Stevens v. State Tax Assessor*, 571 A.2d 1195 (Me.), *cert. denied*, 498

8. Two examples will demonstrate how the problem arises (assume in both hypotheticals that the taxpayer has income from Pennsylvania sources of $10,000 and income from sources in Delaware of $5,000, for a total income of $15,000). First, if the tax rate in each state was the same, say e.g. 2.95%, the computation and apportionment of the taxes would be as follows:

| | | |
|---|---|---|
| Pennsylvania Tax: | $15,000 @ 2.95% = | $442.50 |
| less credit for taxes paid to Delaware | ($5,000 @ 2.95%) − | $147.50 |
| Net Pennsylvania tax | | $295.00 |

Under this scenario where the state tax rates are the same, Pennsylvania would receive $295 in taxes ($10,000 @ 2.95%) and Delaware would collect $147.50 in taxes ($5,000 @ 2.95%).

Second, assume however, that Delaware had a progressive tax rate with a rate that was established by applying a taxpayer's gross income to a predetermined tax rate table, which resulted in a tax rate greater than 2.95%. The computation and tax apportionment, as argued by the Peets, would be as follows:

| | | |
|---|---|---|
| Pennsylvania Tax: | $15,000 @ 2.95% = | $442.50 |

| | | |
|---|---|---|
| less credit for taxes paid to Delaware | ($5,000 @ 5%) | − $250.00 |
| Net Pennsylvania tax | | $192.50 |

It should be noted that if the foreign state's tax rate was a great deal more than the tax rate of a resident taxpayer's home state, the resident taxpayer might not have **any** tax liability to his or her resident state even though substantial income was earned in that state. Thus, in our hypothetical, if the Delaware tax rate was ten percent rather than five percent, the tax due to Delaware would be $500. This $500 credit against the taxpayer's Pennsylvania income tax would result in no tax being due at all to Pennsylvania, even though $10,000 of income was earned here. (Pennsylvania tax, $442.50, less credit for tax paid to Delaware in the amount of $500 = no tax due.)

9. Article IV, Section 2 of the United States Constitution provides as follows:

The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

U.S. Const. art. IV, § 2.

U.S. 819, 111 S.Ct. 65, 112 L.Ed.2d 40 (1990); *see also Wheeler*.

In response to the prospect of their citizens being taxed twice on the same income, many states, including Pennsylvania, created credits for income tax paid to another state. Section 314 of the Pennsylvania Tax Code, 72 P.S. § 7314, provides a tax credit for income taxes paid by Pennsylvania residents to another state based on income earned in that other jurisdiction. The goal of this credit is to protect Pennsylvania citizens from double taxation of their income that is earned in the other states. This goal is achieved by, in effect, "releasing" the out-of-state income through the credit. However, Subsection (b) of Section 314 limits the amount of the credit to the percentage that a taxpayer's out-of-state income bears to his or her total income. The Department's regulations, specifically 61 Pa.Code § 111.4, furnish an explanation of the out-of-state credit as well as an example of the limitation. This section provides as follows:

> (a) *Credit allowed.* The credit allowed shall be limited to that portion of tax due under this chapter determined by applying to the total of such tax a fraction, the numerator of which shall be the amount of the taxable income of the taxpayer *subject to tax* in the other jurisdiction and the denominator of which is the entire taxable income of the taxpayers.
>
> (b) *Example of limitation on credit.* A resident taxpayer earns $10,000 of wages in New York State on or after July 1, 1981. New York State permits him deductions after that date totaling $2,000, and he pays after that date a total tax of $500. In addition, he has intangible capital gains of $5,000. His total Commonwealth taxable income is $15,000 ($10,000 in wages and $5,000 in capital gains) and his total Commonwealth income tax liability is $330 (2.2% of $15,000). The credit of the taxpayer for New York income is limited to $220 ($10,000/$15,000 × 330).

61 Pa.Code § 111.4 (emphasis added). The limitation of the credit ensures that the Commonwealth receives its proper amount of taxes and does not have its revenue reduced or extinguished by a tax credit from another

jurisdiction. Thus, the credit releases that income not attributable to Pennsylvania, but still permits taxation of Pennsylvania income.

■ In arguing for a reversal of the Department's determination in the present case, the Peets posit that their entire income is taxed by the State of Delaware because the Peets' entire income, from both inside and outside of Delaware, is used to compute their Delaware *tax rate*. Therefore, the Peets argue, they are entitled to a credit for the entire amount of taxes paid to Delaware. We must disagree. We believe that the Delaware system, like those systems in other graduated income tax states, uses out-of-state income merely as a measure of the tax rate, rather than actually taxing that income. The Peets' Pennsylvania income, therefore, was not subject to tax by Delaware.

As noted above, a state cannot constitutionally tax income that is not somehow related to that state. *Miller Brothers Co.* Thus, to view the Delaware tax system as the Peets suggest would render its application unconstitutional because it would permit Delaware to tax income that is not derived from or connected to Delaware, thus violating nonresident taxpayers' constitutional rights. Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922, requires us to presume that the General Assembly, in enacting a statute, did not desire the statute to violate either the federal or state constitution. It logically follows, that in construing a statute of another jurisdiction, we are guided by the same presumption. Thus, we must give due regard to the presumptive constitutionality of Delaware's graduated tax system. Therefore, we must construe the Delaware tax code provisions at issue so as not to violate federal or state constitutional principles. Only by construing Delaware's taxation system as taxing only that income attributable to Delaware can we achieve this goal.

Moreover, further support for this construction is drawn from jurisdictions that, like Delaware, tax out-of-state residents by using their entire gross income to calculate the tax rate, thus causing a higher tax rate to be applied to the income within that state. Cases from these jurisdictions conclude that, although out-of-state income is used to *calcu-*

*late the appropriate tax rate,* the out-of-state income itself is not subject to tax. *Stevens; Brady v. State of New York,* 80 N.Y.2d 596, 592 N.Y.S.2d 955, 607 N.E.2d 1060 (1992), *cert. denied,* 509 U.S. 905, 113 S.Ct. 2998, 125 L.Ed.2d 692 (1993); *Wheeler.* The underlying rationale in these cases is the notion that consideration of out-of-state income to measure the appropriate tax rate is not tantamount to taxation of that income. Rather, the income derived from the taxing state is simply taxed at a higher rate pursuant to the graduated tax system. *See United States v. Kansas,* 810 F.2d 935 (10th Cir.1987). By construing Section 314 to include a credit only for income that is actually taxed by another jurisdiction, rather than merely "considered" by the state in arriving at a tax rate, we bring this Commonwealth in line with other states that have confronted this issue. *E.g., Comptroller of the Treasury v. Hickey,* 114 Md.App. 388, 689 A.2d 1316 (1997); *Chin v. Director, Division of Taxation,* 14 N.J.Tax 304 (N.J. Tax Ct.1994), *aff'd sub nom., Carroll v. Director, Division of Taxation,* 15 N.J.Tax 177 (N.J.Super.Ct.App.Div.1995).

In addition, we note that, if we were to adopt the Peets' construction of Section 314, the purpose behind the credit would be eviscerated. The credit is partially designed to ensure that the Commonwealth receives the proper amount of tax from each taxpayer. The Peets' construction, however, would permit a taxpayer to deduct 100% of their tax paid to another jurisdiction, which would reduce, if not completely extinguish, the tax liability otherwise due to their state of residency. For example, under the Peets' formula, if a taxpayer has $300,000 in total income, $100,000 of which is derived from Delaware and $200,000 of which is derived from Pennsylvania, the taxpayer would have the following tax liability:

| Delaware Income Tax | Pennsylvania Income Tax | |
|---|---|---|
| 28% of $100,000 | | = $28,000 |
| | 2.95% of $200,000 | = $5,900 |
| | less Delaware credit | − $28,000 |
| | Net Pennsylvania tax | $0 |

Thus, Delaware's graduated tax rate of 28% would wipe out entirely *any* tax due to Pennsylvania, even on *Pennsylvania* income. Additionally, this interpretation would enrich the taxpayer by allowing him or her to avoid paying taxes otherwise due to the Common-

wealth based on Pennsylvania income that is used in the calculation of the tax rate, but not taxed by another jurisdiction. We decline to reach such an unreasonable and potentially harmful result.

Applying the construction that we announce today, we conclude that the Peets are entitled to a credit against the income tax paid to Delaware based on the amount of Delaware income that is attributable to and actually taxed by Delaware, rather than the amount used to calculate the tax rate. Thus, we hold that the Peets' out-of-state tax credit pursuant to Section 314 is $2,514, as the Commonwealth correctly concluded.

Finally, it appears that the real substance of the Peets' complaint is not so much rooted in the Commonwealth's administration of the out-of-state tax credit as it is with Delaware's graduated system of taxation. Clearly, the Peets' Delaware income is taxed at a higher rate than it would be if they had no other income from another state. However, as we conclude that Delaware is only taxing that portion of the Peets' income attributable to that state, the better forum for the Peets' grievance is the Delaware Legislature rather than this Court.

Accordingly, judgment is entered in favor of the Commonwealth.

### ORDER

**NOW,** January 2, 1998, judgment is entered in favor of the Commonwealth. This order will become final, unless exceptions are filed within 30 days of the entry of this order.